Syllabus.

# JOHANNA MEYER

## *v.*

# AMZI MINTONYE.

*Filed at Springfield May 9, 1883.*

1. JUDICIAL SALE—*strict compliance with the law essential to divest title.* In judicial proceedings *in invitum*, for the purpose of divesting the title to an estate of one person and conferring it upon another, under the constitution there must be a strict compliance with the requirements of the law, and the purchaser, in all such cases, must know at his peril that the law has been complied with. If this is not done, he fails to acquire a good title, however much he may pay for the property.

2. SAME—*sale under void execution—is also void.* The validity of every execution sale, and the sheriff's deed thereon, depends upon the officer's authority to make such sale, and that depends in all cases upon the character and validity of the process under which he acts. If, by reason of the judgment being void, or having for any cause become incapable of being enforced by execution, as, where some of the parties to it have died, and there has been no subsequent revivor of it, and execution should nevertheless be sued out, it will confer no authority upon the officer executing it, and a sale under it, and a deed made in pursuance thereof, will be absolutely null and void.

3. EXECUTION—*issued after the death of the plaintiff—when valid and when not.* An execution sued out upon a judgment after the death of the plaintiff therein, by his administrator, without first having revived the judgment in his favor, by *scire facias*, or filing his letters of administration, under the statute, is absolutely void, and no rights can be acquired under the same.

4. REDEMPTION *from judicial sale—by whom, other than the judgment debtor—and of the rights acquired thereby.* The mere act of redeeming from a judicial sale may be done by one not having the right to redeem, as well as by one having such right, provided the purchaser sees proper to accept of the amount of the charge or incumbrance, and the effect of such redemption will be to divest all the rights acquired under the sale. If the redemption be made by a judgment creditor, in order to be availing to him under his statutory right to redeem, and to pass the title in case of a second sale in satisfaction of his own judgment, he must have a valid execution, followed by a sheriff's deed executed in conformity with the statute. It does not follow that because a redemption in fact has been effected, the redeeming creditor will get a good title to the land, without the existence of the conditions named.

5. So in this case, land had been sold under a decree of foreclosure of a mortgage, and the administrator of a deceased judgment creditor sued out an

execution on the judgment in the name of the deceased plaintiff, without reviving such judgment or filing and recording a copy of his letters of administration in the office of the clerk of the court, and deposited with the sheriff the amount necessary to redeem from the master's sale, and caused a levy to be made upon the premises as a redemption creditor. The purchaser at the master's sale accepted the redemption money of the sheriff, and the property was again sold and purchased by the administrator, to whom a sheriff's deed was made, and the purchaser at the prior sale thereupon assigned his certificate of purchase to him, upon which the administrator also received a master's deed: *Held*, the administrator derived no title from either the sheriff's or master's deed, because the execution under which the redemption and sheriff's sale were made, was void, and conferred no right to redeem, and because by the acceptance of the redemption money by the first purchaser, his purchase, and all rights thereunder, were effectually destroyed, and hence no deed could be made to him or any one else on his certificate of purchase.

6. SAME—*redemption by judgment creditor—what right or title he acquires thereby*. As the acceptance of the money necessary to redeem from a master's sale, by the purchaser, deposited by one having no right to redeem, is simply to extinguish all rights under the purchase, the legal effect of such redemption is to place the creditor so redeeming in the same position in respect to the land as if it had not been previously sold, but this is all. It does not relieve him of the duty of seeing that he was proceeding under legal process. The maxim of *caveat emptor* applies as well in cases where there has been a redemption as where there has not.

7. SAME—*redemption without right—not to operate as a transfer of certificate of purchase*. Where a party under a void execution deposits with the sheriff a sum sufficient to redeem from a prior master's sale of the premises, which is accepted, the sole object being to extinguish the prior purchaser's title under his purchase, and to enable the redemption creditor to acquire the title by a sale under his execution, which fails on account of his execution being void, the court will have no right to hold the transaction as a purchase and assignment of the prior purchaser's certificate of purchase, as that would be to make a contract for the parties.

8. SUBROGATION—*only in equity*. The doctrine of subrogation is a creature of equity, and has no application to an action at law, as, in ejectment. That action lies for the purpose of determining the legal title to land, and the equities of the parties, whether real or supposed, can not be adjusted in it, and such equities are not affected by such a proceeding.

APPEAL from the Circuit Court of Mason county; the Hon. LYMAN LACEY, Judge, presiding.

Amzi Mintonye, the appellee, brought to the November term, 1881, of the Mason circuit court, an action of eject-

ment, against Johanna Meyer, the appellant, for the recovery of a tract of land in said county, consisting of about two hundred acres, being the same now in controversy. There was a recovery in the circuit court, and the appellant brings the case here for review.

There is no room for controversy, nor, indeed, is there any, as to the facts in this case. They are clear, unequivocal and conclusive as to all matters they tend to prove, and hence nothing but pure questions of law are presented for determination. They are as follows:

On the 21st day of August, 1869, William Dierks purchased the land in question of Caleb W. Slade, paying about one-half of the purchase money in cash, and giving his notes, five in number, secured by a mortgage on the premises, for the deferred payments. These notes amounted in the aggregate to $5300. The first note was paid by Dierks, being the only one ever paid by him. The next three were assigned by Slade to John H. Kramer, and the fifth and last to Nancy Mintonye. On the 17th of November, 1879, Rudolf Meyer, the husband of appellant, recovered a judgment, in the Mason circuit court, against the said William Dierks for the sum of $796.25, upon which an execution was duly issued, on the 2d of the following month, and subsequently returned *nulla bona.* Kramer, upon a bill filed by him to foreclose the Dierks mortgage, to which Nancy Mintonye and Dierks were parties, obtained at the February term, 1880, of the Mason circuit court, a decree against Dierks, and an order for the sale of the mortgaged premises. By the decree $3791.51 was found to be then due Kramer on his three notes, and $1447.18 to Nancy Mintonye on the note belonging to her. The property was sold by the master, and purchased by Kramer, under this decree, on the 10th day of April, 1880, for $3919.72, being the amount then due him, he at the time receiving from the master the usual certificate of purchase.

Rudolf Meyer died on the 17th of November, 1880, intestate, and his widow, the appellant, was duly appointed administratrix of his estate.. On the 9th of April, 1881, the administratrix, without having caused her letters of administration to be filed and recorded in the circuit court of Mason county, where the judgment of Meyer against Dierks was obtained, or without having, by *scire facias* or otherwise, revived said judgment, sued out an *alias* execution thereon in the name of her deceased husband, and placed the same in the hands of the sheriff for execution, who subsequently, on the 11th of the same month, levied said execution on the land in controversy. The appellant thereupon paid to the sheriff having such execution the sum of $4232.70, for the purpose of redeeming from the sale under the Kramer decree, which sum the sheriff subsequently, on the 3d day of May, 1881, paid to Kramer, who, at the time, executed to the sheriff the usual receipt acknowledging payment of the amount by the sheriff as redemption money from the sale under the Kramer decree. The lands in controversy were, on the same day, in pursuance of previous notice, again offered for sale, under appellant's *alias* execution, and no one offering more than the amount paid by her to redeem from the previous sale, the premises were struck off to her, and the sheriff then and there executed to her a deed for said lands, of the date last. mentioned, and thereupon returned to the clerk's office said *alias* execution, with the following indorsement thereon: "No part of the debt made, the property levied upon being redeemed by Johanna Meyer, administratrix of the estate of Rudolf Meyer, deceased, as judgment creditor of William Dierks, said execution was levied upon said property, and the same advertised and sold, and no greater amount than the redemption money, interest and costs of sale being bid, the same was struck off and sold to Johanna Meyer, administratrix of the estate of Rudolf Meyer, deceased, for said redemption money, interest and

27—106 ILL.

costs of sale, and I therefore executed her a deed for said property."

William Dierks, for the alleged consideration of $1700, on the 9th day of July, 1881, by a good and sufficient deed, conveyed the land in controversy to appellee, who, on the 25th of the following month, commenced the present suit. Some time after its commencement, notwithstanding the redemption from his purchase at the master's sale, Kramer, with the view, we presume, of strengthening appellant's title, assigned to her the certificate of purchase executed by the master to him, and the master, on her application, executed to her, as assignee of Kramer, a deed for the premises, bearing date October 21, 1881. It was admitted by appellee, on the trial, that Mary Dierks is the wife of William Dierks, and that she is in possession of the property in controversy under a lease to her from appellant, dated May 10, 1881, and extending from that date till the 1st day of March, 1882, which lease was made in her name at her husband's request, she and her husband having lived together on the premises ever since his purchase from Slade, as heretofore stated.

Mr. H. R. NORTRUP, and Mr. W. H. CAMPBELL, for the appellant:

Appellant having paid off the prior lien of Kramer to preserve her own subsequent and subordinate lien, is, in equity, entitled to be subrogated and substituted to all the rights of Kramer. Freeman on Void Judicial Sales, sec. 49; *Bentley* v. *Long*, 1 Strob. Eq. 52; *Howard* v. *North*, 5 Texas, 316; *Dufour* v. *Camfrac*, 11 Mart. 610; *Brobst* v. *Brock*, 10 Wall. 519; *Jackson* v. *Bowen*, 7 Cow. 13; *Blodgett* v. *Hist*, 29 Wis. 182; *Vattle's Heirs* v. *Fleming's Heirs*, 29 Mo. 152.

Purchasers having paid mortgage debt are subrogated to mortgagee's rights. *Kinney* v. *Knœbel*, 51 Ill. 112; *Hough* v. *Ætna Life Ins. Co.* 57 id. 318; *Jacques* v. *Fackney*, 64 id. 87; *Bishop* v. *O'Conner*, 69 id. 431.

If she was subrogated to Kramer's rights, she received no greater right by the assignment than she had before. If equity would have compelled an assignment of the certificate of purchase to her by Kramer, he might legally do so, and she would be protected to the same extent as if she had acquired her rights by litigation.

Mr. O. H. WRIGHT, and Mr. JOHN W. PITMAN, for the appellee:

The execution under which the redemption was made being in the name of a dead plaintiff, was void, and the sheriff's sale and deed thereunder were nullities. *Brown* v. *Parker*, 15 Ill. 307; *Scammon et al.* v. *Swartwout*, 35 id. 326; *Durham et al.* v. *Heaton*, 28 id. 270; Rev. Stat. 1874, chap. 77, sec. 37.

The payment of the redemption money to Kramer extinguished the sale to him, and discharged the land from the sale, as much so as if Dierks himself had redeemed from that sale. *Borders et al.* v. *Murphy*, 78 Ill. 81; *Clingman et al.* v. *Hopkie*, id. 152; *Mulvey* v. *Carpenter et al.* id. 580.

Appellant is not entitled to be subrogated to the rights of Kramer. She sought to avail of a power given by statute, and lost by her own negligence and fault. In such cases equity gives no relief. 1 Story's Eq. Jur. secs. 151, 174, 175, 177.

The equities of the parties being equal, a court of equity would remain silent and passive. 1 Story's Eq. Jur. sec. 176.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

Notwithstanding the extended statement of facts, it will be perceived, by a careful analysis of them, the case itself is brought within a very narrow compass. As the land in controversy originally belonged to Dierks, through whom both parties claim title, it is clear if appellant has succeeded to

his title, she acquired it either by virtue of the sheriff's deed to her of the 3d of May, 1881, or by the master's conveyance to her of the 21st of October, 1881, and if she did not acquire title by either of these conveyances, it is evident appellee has such title by virtue of Dierks' deed to him of the 9th of July, 1881, as that, outside of the Slade mortgage, is the only conveyance he has ever made of the premises in controversy. It is only necessary, therefore, to inquire whether appellant has shown title in herself by either of the conveyances to her above mentioned.

First, with respect to the sheriff's deed. It is hardly necessary to observe that the validity of every execution sale, and all conveyances or other evidences of title founded thereon, depend upon the authority of the officer to make such sale, and his authority in all cases depends upon the character and validity of the process under which he acts. If, by reason of the judgment being void, or having, from any cause, become incapable of being enforced by execution, as, where some of the parties to it have died, and there has been no subsequent revivor of it, and execution should nevertheless be sued out, as was done in this case, it would confer no authority whatever upon the officer executing it, and a sale made under it, and all official conveyances or other evidences of title founded thereon, would be absolutely null and void. This familiar common law doctrine has long since been fully recognized by this court, and could not now be departed from without endangering the titles to many valuable estates that have doubtless been bought and sold on the faith of it. In short, it has become a rule of property, and it is now too late to question it. *Pickett* v. *Hartsock,* 15 Ill. 279; *Brown* v. *Parker,* id. 307; *Turney et al.* v. *Young,* 22 id. 253; *Scammon* v. *Swartwout,* 35 id. 326; *Littler* v. *The People ex rel.* 43 id. 194; *Borders et al.* v. *Murphy,* 78 id. 81; *Clingman et al.* v. *Hopkie,* id. 152; *Mulvey* v. *Carpenter et al.* id. 580. Numerous decisions to the same effect

might be cited from other States, but it is not necessary to do so. The *ratio decedendi* in all these cases is, that the process having. been sued out in a case not authorized by law, it is inoperative and void, and consequently confers no authority upon the officer to act at all. In such cases it is wholly immaterial whether the invalidity of the process arises from the fact of the judgment being void, or from some other cause. It is sufficient that it is issued in violation of law, whatever may be the ground of such illegality. It is clear, therefore, from the above authorities, that by reason of the Meyer judgment not having been revived after his death, the execution issued thereon was unauthorized by law, and that consequently the sale, and sheriff's deed made under it, conferred upon appellant no title to the premises.

It remains, however, to consider what effect the redemption under that execution had on the master's sale, and the certificate of purchase issued to Kramer in pursuance thereof, for it is manifest appellant's title depends exclusively upon whether, notwithstanding such redemption, Kramer's interest in the land continued as before, for it is clear the certificate of purchase could not exist as a muniment of title after the title itself had ceased. It still remained evidence of the historic fact that the equitable title was once in Kramer, the purchaser, but that was all. As redemption, when applied to an estate, is the mere act of discharging some lien, incumbrance or burden upon it, as, the payment of a mortgage debt, or of a judgment or decree, either before or after sale, it is important, in considering the question we are discussing, not to confound the act of redeeming with the right to redeem, or with the right to acquire a good title under a conveyance made in pursuance of such redemption. The mere act of redeeming may always be done by one person as well as another, provided the creditor sees proper to accept the amount of the charge or incumbrance. For instance, if A should have a judgment against B, which was a lien upon

the latter's land, and C should, without the knowledge or privity of B, go to A and propose to pay off the judgment on his own account, A undoubtedly would have the right to decline the payment without at all affecting or prejudicing his lien upon the land; yet if he should accept the money, there can be no doubt but that the redemption of the land from the incumbrance would.be complete.   So in the present case, by reason of the execution being invalid, it is clear there was no right to redeem, and Kramer might well have declined to receive the redemption money, had he thought proper to do so; but this right to decline the redemption money, when tendered, like most of rights, was one that might be waived, and Kramer having seen proper to exercise it, no reason is perceived why the redemption was not complete, notwithstanding appellant acquired no title by her subsequent purchase, as we have already seen.   It does not at all follow that because a redemption in fact has been effected, the redeeming creditor will necessarily get a good title to the land redeemed.   That depends upon other considerations.   To insure a good title there must be not only the payment of the redemption money, but also a proper levy and sale of the premises, under a valid execution, followed by a sheriff's deed executed in conformity with the statute.

So far, then, as the previous sale in this case is concerned, we hold the payment, and voluntary acceptance by Kramer of the redemption money, had precisely the same effect it would have had if the execution had been valid.   The effect in either case would be to relieve the land of the incumbrance, the consequences of the previous sale, and to extinguish all rights under it, including the certificate of purchase. But this alone, as we have just seen, was not sufficient to make appellant's title good under her purchase.   It simply placed her in the same position with respect to the land as if it had not been previously sold.   It removed every impedi-

ment out of the way of her execution, thereby enabling her to proceed with her execution in the same manner as if no previous sale had ever occurred. But this was all. The reception of the redemption money by Kramer did not at all relieve her from the duty of seeing that she was proceeding under legal process. This must be looked to in all cases, whether there has been any redemption or not, otherwise there is no assurance of obtaining a good title. The maxim of *caveat emptor* applies as well in cases where there has been a redemption as where there has not.

To the suggestion of hardship, so far as it affects the present proceeding, we see nothing to distinguish the case in this respect from the common case of one purchasing land at an administrator's sale, where, by reason of the non-observance of the statute regulating such sales, the purchaser acquires no title. Notwithstanding the purchase money in such case is applied to the payment of the ancestor's debts, for which the heir would be liable to the extent of assets received by him, he is nevertheless, by the rules of the common law, as long held by this, and other courts of the highest respectability, permitted to recover the land without restoring the purchase money, or any part of it. These cases proceed upon the principle that the purchaser must know, at his peril, whether he gets a good title. The enforcement of the rule tends to secure an observance of the law regulating such sales, and thus preventing abuses. Suits of this character are proceedings *in invitum*, for the purpose of divesting the title to an estate of one citizen and conferring it upon another, and this, under our constitution, can only be done by a strict compliance with the requirements of law, and the purchaser in all such cases must know, at his peril, that the law is complied with. If this is not done, of course he fails to get a good title, however much he may have paid for the property. On the other hand, if the law is observed, he acquires a good title

to the estate, although he may not have paid one-fourth its value.

To the suggestion that appellant ought, in some way, be subrogated to the rights of Kramer, which is not made very clear by the learned counsel, it is sufficient to say the doctrine of subrogation is a creature of equity, and consequently can have no application to an action at law like the present. This suit is brought for the sole purpose of determining the legal title to a tract of land, and the equities of the parties, whether real or supposed, can not be adjudged in it. If appellant has any equities which the law will enforce, which is a matter not before us now, they are not affected by this proceeding, and she must go into a court of chancery, where such matters are cognizable, for a court of law has no power or jurisdiction to pass upon them.

As to the further intimation that the payment of the redemption money to Kramer might be treated as a sale to appellant of his certificate of purchase, there are several answers, but one is sufficient. It is clear no such thing was intended by the parties, but the very contrary. The object in paying and receiving the money was, as we have abundantly shown, to extinguish Kramer's title under the previous sale, so as to enable appellant to acquire title by a sale under her own execution, as the sheriff's return, which is conclusive on appellant in a mere collateral proceeding like this, clearly shows; and to now turn round, in the face of the facts thus conclusively established, and hold the transaction amounted to a mere sale of the certificate of purchase, would be simply to make a contract for the parties which they never intended, and which, in all probability, was never thought of until after the fatal defect in appellant's title was discovered,—would be to set at defiance all rules and principles which ordinarily govern courts in determining whether a contract does or does not exist under a given state of facts. This we are not prepared to do.

The effect we have given to the redemption in this case is in strict conformity with the rule laid down in the three cases in 78 Ill., above cited.

The judgment will be affirmed.      *Judgment affirmed.*