# CHARLESTON.

## WADE v. SOUTH PENN OIL CO.

### Submitted June 11, 1898—Decided November 26, 1898.

1. LEASE—*Surrender of Lease*.
    If a lessee for life or years take a new lease of the reversioner for a longer or shorter term than before, it is a surrender of the first lease. (p. 381).

2. LEASE—*Option—Surrender of Lease*.
    A lease yielding rent and an option to purchase the fee outright are not inconsistent, and the taking such lease during the the term of the option will not abrogate or surrender it. (p. 383.)

3. LEASE—*Option—Election to Purchase*.
    Where there is a lease for years with rent, and an option to purchase the fee, an election to purchase under the option, and tender of the purchase price under it, ends the lease and its rent. (p. 383).

4.  TENANCY—*Tenant for Life—Purchase of Reversion.*

A purchase of the reversion in fee by a tenant for years ends the tenancy, and the tenant is not thereafter estopped from denying further continuing title or rent in the landlord.  (p 383).

Appeal from Circuit Court, Wetzel County.

Bill by James Wade against the South Penn Oil Company.  Decree for defendant, and plaintiff appeals.

*Affirmed.*

THOMAS P. JACOBS and J. W. NEWMAN, for appellant.
A. B. FLEMING and U. N. ARNETT, for appellee.

BRANNON, PRESIDENT:

Wade, on June 9, 1893, made a lease for five years to Mc-Caslin of a tract of land for production of oil and gas, giving Wade one-eighth of the oil and six hundred dollars per year for each gas well as rent, which lease was assigned July 2, 1890, by McCaslin to South Penn Oil Company. On April 5, 1894, Wade made a deed, which, in its granting clause, granted to one Smith all the oil and gas in the tract, but the deed says that it was agreed that Smith had an option to buy at the end of five years the oil and gas in the tract, and on payment they were to be conveyed to him; and the deed further states that it was on the condition that Smith should, within thirty days after the completion of a well, either pay Wade one thousand two hundred and fifty-two dollars, or release and reconvey; and it further states that it was on condition to be void if a well should not be completed in five years, unless Smith should pay one thousand two hundred and fifty-two dollars before the expiration of that time; and it further provided that, if "the above lease become void," then the oil and gas right should draw one dollar per acre yearly until "this option is paid in full, then deed to be made by parties of first part, or surrendered." Smith assigned his rights under this instrument to the South Penn Oil Company, April 16, 1894. Afterwards, July 31, 1895, the South Penn Oil Company took from Wade a lease of the same land for production of oil and gas for the term of ten years, covenanting to pay Wade as rent one eighth of the oil and five hundred and fifty dollars per year for each gas well. The company made no develop-

ment during the life of the McCaslin lease, but under the lease to itself it developed oil upon the tract in paying quantity, and tendered Wade one thousand two hundred and fifty-two dollars in full satisfaction of his rights to the oil and gas, claiming right to do so under the said option; but Wade refused to receive it, and the money was paid in bank to his credit, and the answer of the company still tenders it. Wade demanded an eighth of the oil, and, the company refusing it, Wade brought this suit to compel a discovery of the oil produced from the tract, and for an account thereof. The circuit court dismissed his bill, and he appeals.

There is no dispute of facts. The sole question in the case is as to the effect of said papers. There can be no question that the taking of the second lease was, by law, a surrender of the McCaslin lease by the company, as, if a lessee for life or years, or his assignee, take a new lease, of the reversioner, for a greater or shorter term than before, there is a surrender of the first lease. 2 Minor, Inst. 791; 2 Tayl. Landl. & Ten. § 512. But then comes the question, what is the effect of the second lease upon the option instrument? If it were a mere lease, it would be surrendered like the first lease; but it is not a lease. What is it? It is an option to buy all the oil and gas within five years of its date. Read by its four corners, it imports nothing else. If its strictly granting part stood alone, it would be an absolute grant, and, no doubt, the subsequent lease covenanting to pay a share of the oil would be binding on the lessee company, for there is the covenant to pay, and a lessee cannot deny his landlord's title or his agreement to pay rent; and, even when one who is the real owner enters into a lease leasing his own land from another, this rule prevents him from setting up title in himself. 3 Tayl. Landl. & Ten. § 80. To bring the case under this doctrine, counsel for Wade contends that by the first lease and said option deed the company, at the date of the second lease, owned all the oil, and, taking the second lease, it is the case of a man making himself by deed a tenant to another of his own land, and he cannot deny his landlord's title, or avoid the rent. This would be so were this option not a mere option, but an instrument of abso-

lute grant which has already invested the company with ownership of the oil. But it had not so operated; it was a mere right to elect to become such owner. If an absolute grant, why such profuse provisions of option to purchase? There is no legal inconsistency between the second lease and the option. The former gave the lessee the the right to mine for oil for ten years, paying rent; the latter gave the separate distinct right to purchase outright, at a fixed price, within five years. The purchase would, of course, close the lease by merger, as the right to the rental would pass from the landlord upon his sale of the fee to the tenant, and the leasehold estate would sink and cease in the reversion the greater estate, upon their union in the same person, under well-known principles. Tied. Real Prop. § 63. And it is clear, when a tenant purchases the fee, his estoppel to deny the landlord's title ceases, because the tenancy ceases. *Campbell* v. *Fetterman's Heirs*, 20 W. Va., 398; 2 Tayl. Landl. & Ten. § 502. He may thereafter set up his own title in fee against rent. Wood, Landl. & Ten. 373. The option invested Smith, before the second lease, with only an election to purchase, and its acceptance after said lease made a purchase after it. *Swearingen* v. *Watson*, 35 W. Va., 463, (14 S. E. 249). Surely, a tenant can make a purchase of the fee after he becomes a tenant. This is all I see in the case. Upon tender of the price fixed for a purchase, Wade was not entitled to a share of the oil, and had no right to demand an account of the oil produced, and his bill was properly dismissed. He is entitled only to the one thousand two hundred and forty-two dollars. Decree affirmed.

*Affirmed.*