LARSON, Appellant, vs. OISEFOS and wife, Appellants, and
WYCKOFF, Respondent.

*May 29—June 18, 1903.*

*Vendor and purchaser of land: Land contract: Foreclosure: Appeal
and error: "Aggrieved party": Right of appeal: Practice:
Subrogation: Rights of purchaser at execution sale.*

1. The right to appeal from a judgment is confined to parties ag-
grieved in some appreciable manner by the decision involved.
If the appellant is a person not so aggrieved, he is deemed not
to be within the provisions of the appeal statutes, and the rule
is to dismiss the appeal.

2. Where, in an action to foreclose a land contract, the judgment in
favor of plaintiff provided that an execution purchaser should
be subrogated to plaintiff's rights on paying the amount found
due by the judgment, plaintiff is not prejudiced and has not
sufficient interest in that matter to maintain an appeal.

3. A portion of the land included in a land contract was sold under
execution against the vendee, the part not sold being the home-
stead of the vendee. Subsequently the vendor foreclosed the
land contract, and the judgment provided that the execution
purchaser might be subrogated to the vendor's rights on pay-
ing the amount due on the judgment. *Held,* that the court erred
in decreeing to the execution purchaser the privilege of redeem-
ing from the land contract and thereby acquiring the homestead
rights of the vendee. The limit of acquirement by such re-
demption should be sufficient to indemnify the execution pur-
chaser for cost of making redemption in excess of the value of
the land at the time of the execution sale over what he paid for
the equity therein.

4. In such case, in order to work out complete subrogation, the
vendee is entitled to the unused value which the execution pur-
chaser did not pay at the execution sale, to indemnify such
vendee against being compelled to make up such value in order
to save the homestead, and the execution purchaser is entitled
to the benefit of the vendor's lien on the homestead to indem-
nify himself against loss by being compelled to contribute more
than such unused value to save what he acquired at the execu-
tion sale from plaintiff's lien.

APPEALS from a judgment of the circuit court for Trem-
pealeau county: J. J. FRUIT, Circuit Judge. *Reversed on
one appeal; the other appeal dismissed.*

Action to foreclose a land contract. The complaint was in the usual form. The vendee was the defendant, *Syver Olson Oisefos.* The land consisted of 120 acres. The purchase money unpaid at the start was $892. Later $90 was paid. All was due when the action was commenced. Prior thereto defendant *James N. Wyckoff,* in proceedings for the enforcement of a judgment against *Oisefos,* acquired by a sheriff's deed all of the latter's interest in eighty acres of the land. The other forty acres was occupied by *Oisefos* and wife as a homestead. *Wyckoff* answered, setting forth the facts as to his title, and asking, among other things, that the amount found due plaintiff, if adjudged to be a lien upon the eighty acres paramount to the title under his sheriff's deed, be apportioned between that and the homestead forty. The court found due plaintiff $1,183.90, and that she was entitled to judgment in due form as to the entire 120 acres, leaving *Wyckoff's* title subject thereto. Judgment was so rendered December 14, 1901, the time for redemption being fixed at ninety days. March 3d thereafter, upon the hearing of an order to show cause, made some time previously and in form at the term of court at which the judgment was rendered, it was modified, enabling *Wyckoff,* upon paying plaintiff the amount adjudged to her, to be subrogated to her rights as against the vendee in the contract. It was also adjudged that in case *Syver Olson Oisefos,* within the time limited for redemption, should pay according to the judgment, he should be entitled to a deed of the 120 acres, subject, however, to the full fee title of the eighty acres in *Wyckoff.* From that judgment *Oisefos* and his wife appealed, and also the plaintiff.

For the plaintiff there was a brief by *Anderson & Ekern,* and oral argument by *H. L. Ekern.*

*Robert S. Cowie,* for the appellants *Oisefos.*

For the respondent *Wyckoff* there was a brief by *Richmond*

& *Richmond,* attorneys, and *Bleekman & Bloomingdale,* of counsel, and oral argument by *S. Richmond* and *F. H. Bloomingdale.*

MARSHALL, J. Plaintiff obtained a decree awarding to her the full relief claimed in her complaint. She challenges the judgment only because of the relief given to *Wyckoff,* not affecting her in any way. We are unable to see how she can be deemed to have a sufficient interest in that matter to enable her to maintain her appeal. It is entirely immaterial to her whether *Wyckoff* pays the amount adjudged to be due her, or whether the vendee in the land contract pays the same. It is entirely immaterial to her what the rights of such vendee and *Wyckoff* are between themselves, so long as the right adjudged to either in no way abridges that claimed by or adjudged to her. There is no such abridgment; therefore it necessarily follows that she is in no way prejudiced by the judgment, regardless of what the rights are of the other parties to the litigation. It by no means follows that every party to a judgment has a right to appeal therefrom merely because it is wrong. The right of appeal is confined to parties aggrieved in some appreciable manner by the decision involved. When a person not so aggrieved appeals, he is deemed not to be within the provisions of the appeal statutes. In such circumstances the court obtains no jurisdiction to consider any matter raised by the appeal. Upon its attention being called to the situation, the rule is to dismiss the appeal. *Amory v. Amory,* 26 Wis. 152. That must be the result in this case as to plaintiff's appeal.

It is claimed on the part of appellants *Oisefos* that the principles of subrogation do not apply to *Wyckoff,* as regards the rights of the vendee in the land contract. That, as it seems, may be tested by a concise statement of such principles and by testing the facts thereby. They are purely equitable in character. The sole purpose thereof is to prevent one per-

son from in the end escaping those burdens which belong to him to bear, yet fall presently upon another who is compelled temporarily to assume them to protect his own interests. They apply whenever one person for his own protection is compelled to assume the debt of another, which such other in equity and good conscience should pay. All difficulties cease, generally, where subrogation is claimed, when the essential facts involved are clearly understood.

Testing the case in hand by what we have said, we find all the essential facts referred to without serious difficulty. The debt due upon the land contract was that of *Oisefos*. The legal title to the three forties of land covered by the contract were held by plaintiff to secure payment of the amount due thereon. The equitable ownership of the forty claimed by *Oisefos* was as firmly so held as the equitable title to the two forties possessed by *Wyckoff*. There was no way by which the latter could protect his equity except by paying the indebtedness of the former. The equity of redemption as to the two forties was inseparably connected with that of the other forty. The latter could not be redeemed from without redeeming from the other, and *vice versa*. *Wyckoff* was under no obligation, legal or equitable, in case of assuming the burden of redeeming all of the land in order to preserve his own interest, to bear it permanently, so far as that would benefit *Oisefos,* without any consideration moving directly or indirectly from him to pay therefor. Such assumption could not be deemed voluntary and subrogation fail on that account, since the element of necessity as to *Wyckoff* to prevent the loss of his own property moving him to action would be inconsistent therewith.

The judgment in this case was evidently rendered upon the theory that the sole essential to the applicability of the doctrine of subrogation is that the person to be subrogated shall for his own protection pay the debt of another. Such, obviously, is not sufficient. There must be, in addition to legal

liability of such other for the indebtedness and payment thereof by such person under compulsion to save his own interests, the obligation of such other in equity and good conscience to reimburse such person for the protection accorded him by the latter's act, which would otherwise entail a loss to him. It follows that, if the judgment complained of goes further than to enable *Wyckoff* to indemnify himself against a loss which would otherwise go to enrich *Oisefos,* it violates the fundamental principles of subrogation. That is used, as before indicated, to prevent one person, who, acting with clean hands to protect himself, incidentally but necessarily lifts a burden from another, giving him aid which he cannot in justice continue to enjoy without indemnifying such person against loss in the transaction. Subrogation does not in any case legitimately put money, as mere gain, into the purse of any one. It is grounded in the benevolence, so to speak, of equity jurisdiction. Obviously, to use it to aid a wrong, or to promote the accumulation of property by one without yielding up an equivalent therefor, would be inconsistent with the plainest principles of equity. The cases illustrative of this are numerous. *McLaughlin v. Curts' Estate,* 27 Wis. 644; *Swarthout v. C. & N. W. R. Co.* 49 Wis. 625, 6 N. W. 314; *Conner v. Welch,* 51 Wis. 431, 8 N. W. 260; *Railroad Co. v. Soutter,* 13 Wall. 517; *Griffith v. Townley,* 69 Mo. 13; *Meyer v. Mintonye,* 106 Ill. 414; *German Bank v. U. S.* 148 U. S. 573, 13 Sup. Ct. 702; *Schoonover v. Allen,* 40 Ark. 132.

Counsel for appellants *Oisefos* insist that the result of the judgment complained of, should it stand, will be one which, as stated, subrogation cannot be legitimately used to produce; that whereas *Wyckoff* purchased only the value of the equity of redemption as to the two forties of land, the value thereof, after deducting from the full value of the land the amount of the incumbrance chargeable thereto, the judgment says that he shall have, in addition thereto, the whole of the forty

possessed by *Oisefos,* or, in lieu thereof, the difference between what he paid for and the full value of the land as a clean profit. Counsel seems to be right in that. We are unable to see any escape from it. Counsel for respondent fails to suggest any. A reference to the doctrine that if one person pays off a lien upon property which belongs to another, in order to protect himself from loss, in the due exercise of the right of redemption as to other property owned by himself, he is entitled to be subrogated to the rights of such lienor, there being no superior equity, does not reach the question. In all such cases, as will be easily seen, subrogation merely takes place to allow the person paying under compulsion a prior lien to shield himself against loss. He can invoke subrogation merely as a weapon of defense against loss. If a person buys an equity of redemption in property, paying for that only, the subject of the purchase becomes legally bound as to all underlying claims thereon, and the purchaser, to the extent of the value of the property in excess of the equity purchased, becomes morally bound to protect those responsible personally for such claims. In the light of those elementary principles, *Wyckoff* is entitled to keep, as against the whole world, just what he acquired through the execution sale and gave an equivalent for. Equity will not aid him in obtaining more, through the use of the principles of subrogation, but will rather aid in preventing him from obtaining more to another's loss. So it is held, as contended by appellants *Oisefos,* that where a person acquires title to realty by the enforcement of a junior lien, paying therefor merely the value of the equity, he not only cannot, if compelled to pay off the senior lien, it being also an incumbrance upon other property, be subrogated to the rights of the payee against his debtor, as to the difference between the full value of his own property thus redeemed at the time of his purchase of the equity therein and what he paid for such equity, but such debtor, upon paying off such lien, may him-

self be subrogated to the rights of his creditor as to such difference.  1 Jones, Mtgs. §§ 735–737; *Booker v. Anderson,*. 35 Ill. 66.

In the light of the foregoing it must be held that the trial court, instead of decreeing to respondent the privilege of redeeming from the land contract and thereby acquiring all the rights of plaintiff therein, the limit of acquirement by such redemption, as against *Oisefos,* should have been sufficient to indemnify respondent for the cost of making the redemption in excess of the value of his land at the time of the execution sale over what he paid for the equity therein.

On the question of how far it is necessary for subrogation to go in *Wyckoff's* favor as indemnity, appellants' counsel are in error.  That comes from a wrong view of the value of the equity of redemption in the two forties at the time of the execution sale.  If it were the full value of the land less the entire amount due upon the land contract, counsel would be right.  But it is the full value of the land at the time of the sale, less such proportion of the indebtedness as such full value bears to the then value of all the land covered by the contract.  The entire amount of the unpaid purchase money upon the contract cannot be deemed to have been a lien upon the two forties sold at the sheriff's sale, because the other forty was the homestead of *Oisefos* and wife, and in case of a sale under a mortgage foreclosure, it would not be chargeable with the lien of the foreclosure judgment, except contingent upon the proceeds of the other lands covered not being sufficient to discharge the judgment, if they could be sold separate from the homestead without injury to the interests of the parties.  We have no such situation to deal with here. The rights of the owner of the homestead in such circumstances exist by force of the statute (sec. 3163, Stats. 1898). *White v. Polleys,* 20 Wis. 503; *Hanson v. Edgar,* 34 Wis. 653.  In case of a prior mortgage lien covering a homestead and other lands being paid off by the owner of a junior lien

on the equity of redemption in the lands outside of the homestead for his protection, he cannot have the aid of equity jurisdiction to enforce the prior lien against the homestead till the other lands are first exhausted, because the mortgagee himself could not so deal with the homestead. A right acquired by subrogation does not increase by the transfer from one to the other. Here the right of the primary owner was the same as to the homestead forty as the other lands. She held the legal title to all thereof, with the right to have the same freed from equities resting thereon, upon noncompliance by the owners thereof with the conditions of the judgment of strict foreclosure. Respondent is entitled to the same right upon paying the plaintiff's claim, so far as he would otherwise suffer loss under the principles stated.

The result is that appellants *Oisefos* are entitled to the benefit of the unused value of the two forties of land, that is, the value which respondent did not pay for at the execution sale to indemnify themselves against being made poorer by being compelled to make up such unused portion in order to save the homestead forty. Respondent is entitled to the benefit of plaintiff's lien on the homestead forty to indemnify himself against loss by being compelled to contribute more than such unused value of the two forties to save what he acquired at the execution sale from the plaintiff's lien. The parties, by reason of their relations to the land covered by the contract, and the facts, are entitled to indemnity against loss, each against the other. That is the law of subrogation, and as far as it goes. In order to properly work out the equities as stated, it will be necessary to determine the value of the two forties of land covered by the execution sale at the time thereof, and the then value of the forty possessed by *Oisefos*. The equities must be adjusted as of the instant their relations commenced.

It seems that the value of the two forties of land, if to be governed by the general rule, should be taken to have been

liquidated, so to speak, by the sale. Property is liable to be so sold on execution, that a court of equity would not regard the result as even *prima facie* evidence of value; but ordinarily the amount realized at a fair execution sale is taken as the true value to be dealt with in the administration of justice. There is nothing in this case to take it out of that rule. We must presume that the amount which the equity in the two forties sold for, and such proportion of the whole amount adjudged to be due upon the land contract as the value of such two forties at the time of such sale bears to the then value of all the land covered by the contract, will together correctly measure the full value of such two forties. By giving appellant *Oisefos* credit upon the amount adjudged to be due upon the land contract as between himself and respondent, in case the latter redeems from plaintiff's claim, of such sum as will, with what the equity in the two forties sold for at the execution sale, equal the then full value of such two forties as ascertained in the manner aforesaid, and respondent be subrogated to the rights of the plaintiff against the other forty only for the balance of such amount, neither will suffer any loss by reason of anything being acquired from him directly or indirectly by the other without yielding up an equivalent therefor.

In order to render a proper decree, further evidence must be taken and findings made. The amount adjudged to be due upon the land contract must be apportioned between the two holdings of land as of the time of the execution sale, as we have indicated. A judgment should then be rendered in form in favor of the plaintiff and against all the defendants, with a provision that upon payment being made to her within the time limited therefor, by either party interested in the equity of redemption, she shall make such party a deed in harmony with the terms of the land contract, subject to the right of the other party interested in the equity of redemption to a deed, from such grantee, of the land to which his equity re-

lates, upon payment to such grantee, within some reasonable time to be fixed by the judgment, of the amount chargeable by the terms thereof to such equity.

*By the Court.*—The judgment is reversed on the appeal of appellants *Oisefos,* and the cause remanded for further proceedings in accordance with this opinion. The appeal of the plaintiff is dismissed.