# CHARLESTON.

JEMIMA KERNS v. JOHN CARR et al.

Submitted February 26, 1918. Decided March 19, 1918.

1. ESTATES—Merger.

Subject to certain exceptions, based upon equitable principles, where a greater and a less estate unite in the same person without an intermediate estate, the less immediately merges or disappears in the greater. (p. 79).

2. DEEDS—Wills—Restraint on Alienation—Fee—Validity.

The right of alienation is an inherent and inseparable quality of an estate in fee simple, whether the estate be created by grant or devise, and where either forbids all alienation it is void because repugnant to the estate granted or devised. (p. 80).

3. SAME—Trusts—Spendthrift Trusts—Restraint on Alienation.

Though restraints upon the alienation, voluntary or involuntary, of equitable life estates, commonly designated spendthrift trusts, are valid, a grantor or devisor may not restrain the alienation, voluntary or involuntary, of a legal life estate. (p. 81).

4. SAME—Restraint on Alienation—Validity.

Provisions of a deed conveying a legal life estate with remainder over, that the grantee "is not to have the power to sell or make a deed for such land" and that a court "is not to have the right to sell or rent" it for the grantee's debts, are void as an unlawful restraint upon alienation. (p. 81).

5. SAME—Action to Set Aside—Fraud—Evidence.

Evidence of the fraud alleged in the bill and denied in the answers thereto when examined and considered is found to be sufficient to sustain the allegation. (p. 82).

Appeal from Circuit Court, Tucker County.

Suit by Jemima Kerns against John Carr and others. Decree for plaintiff, and defendants appeal.

*Affirmed, and remanded.*

*A. R. Stallings,* for appellants.

*J. W. Harman,* for appellee.

LYNCH, JUDGE:

The decree declares fraudulent and void as to the claim of the plaintiff a deed made by John Carr, her brother, to his co-

defendants, O. L. Carr and Estman Carr, his sons, and S. M. Carr, his daughter, October 25, 1915, and subjects to sale the life estate of the grantor created by Enos Carr, his father, by deed of conveyance to him for life with remainder over in fee to his children December 11, 1885. Enos Carr died intestate leaving surviving him the plaintiff, John Carr and others, his heirs at law, and they united in a deed conveying with covenants of general warranty land sold by Enos Carr to H. C. Jennings and his brother in his life time, but for which he did not make them a deed. The covenant was broken and from the breach a liability accrued which the parties thereto compromised and adjusted by the payment and acceptance of a fund to which each of the grantors except John contributed and who thereafter sued and recovered judgments against him, each for the pro rata share for which he refused to compensate them. There is therefore no controversy as to the validity and binding effect of the monetary claim involved upon this appeal.

There are for decision but two main questions; the proper construction and interpretation of the deed from Enos Carr to his son John, and the sufficiency of the proof to show fraud in the deed from John Carr to his children. All others are minor or incidental.

The first question requires an interpretation of the provision of the deed of Enos Carr the language of which is: "John Carr is not to have power to sell or make a deed for such land, nor the law nor court of justice is not to have the right to sell or rent this land for John Carr's debts, at his death (it) is to pass to his lawful heirs." It is conceded that the deed vested in the grantee an estate for life only, and such is the plain import of the instrument itself. Nor does it create or signify an intention to create a trust for his benefit or protection against the demands of creditors. It conveys land directly to him with remainder over to his children in fee. However, conceding the power to convey, his deed of October 25th effected nothing more than the merger of the life estate so created into the fee simple estate; for when a greater and a less estate unite in the same person without an intermediate estate, the less immediately merges or disappears in the great-

er; 2 Bouv. Institutes 375, No. 1989; 2 Minor's Institutes (2nd Ed.) 368; *Scott* v. *Scott,* 18 Gratt. 150; *Turk* v. *Skiles,* 45 W. Va. 82; *Wade* v. *South Penn Oil Co.,* 45 W. Va. 380. To this general rule there may be exceptions based upon equitable principles, as where a mortgage or trust lien may be preserved without injustice to any of the parties interested, as held in *Sullivan* v. *Saunders,* 66 W. Va. 350.

Is the provision quoted from the Enos Carr deed void as an attempt to impose a restraint upon the right of alienation? There seems to be a general unanimity of opinion among the authorities discussing the subject that the right of alienation is an inherent and inseparable quality of an estate in fee simple whether the estate be created by grant or devise; and a grant or devise which forbids all alienation is void as to the limitation because repugnant to the estate granted or devised. 24 Am. & Eng. Enc. Law, 864, citing many English and American decisions. The reason usually assigned as the basis of this conclusion is that as property is necessary for trade and commerce between individuals and nations it cannot lawfully be withdrawn from such uses by restrictions placed upon its disposal.

After an elaborate discussion and review of the decisions as regards the validity of such restraints and the manner in which they may lawfully be imposed, Judge BRANNON reached the conclusion in *Guernsey* v. *Lazear,* 51 W. Va. 328, that although a wife lawfully may by will entrust her executor with land and the collection and disbursements of the rents and profits thereof for the use and benefit of her husband while he lives, and may provide that neither the real estate nor its profits shall be bound for his past or future debts, she cannot lawfully devise the land and profits directly to him for life or in fee upon the same condition as to debts and liabilities. He says: "So if a life estate is conveyed to the party himself, vesting him with the legal estate, such a limitation or provision against alienation or debts would be void." p. 340. This may be and perhaps is dictum merely, but the principle is sustained by abundant authority and is questioned scarcely anywhere, if at all, though in this state and in many others restraints upon the alienation of equitable life estates, com-

monly designated "spendthrift trusts" are valid. *Guernsey* v. *Lazear, supra; Hoffman* v. *Beltzhoover,* 71 W. Va. 72. The point seems not to have been decided in this state, yet it is held generally that a provision for the forfeiture or limitation over to a third person of a life estate or interest upon the alienation, voluntary or involuntary, of such life estate or interest, is valid; *Camp* v. *Cleary,* 76 Va. 140; Gray, Restraints on Alienation, § 78; 24 Am. & Eng. Enc. 870.

But this case presents a problem slightly different. The provision is, not that the life tenant and his assigns shall upon alienation lose the estate by forfeiture or by limitation over, but that he shall be compelled to keep it, so that neither his grantees nor his creditors can acquire or charge it. The case of *Camp* v. *Cleary, supra,* stated the question but declined to consider it because not necessary to the decision. In *Railway Co.* v. *Honaker,* 66 W. Va. 136, 148, restrictions upon the alienation of an estate in fee were held void. See also *Totten* v. *Coal & Coke Co.,* 67 W. Va. 639, 643, where many authorities are cited. In that case, T. K. Totten for a small money consideration and "a good and peaceable life maintenance" granted to his wife and children all of his estate, reserving to himself the legal title for his life and further providing that "if the said T. K. Totten & wife think they can better their situation then they shall be vested with the right and power to sell and convey everything conveyed in this deed." Pursuant to that power they sold the property. It was held by a divided court that the first grantees took only an estate for the life of the grantor, subject to the reserved power of alienation, and that the reconveyance was valid. Though the first grantees were thus deprived of their power of alienation over the estate conveyed to them, such restraint did not totally or unreasonably remove the property from the channels of commerce since the power of alienation remained in the grantor, according to the majority view, nor was there any stipulation that the property should not be liable for the debts of the grantees.

The discussion in *Guernsey* v. *Lazear, supra,* indicates the trend of this court toward holding such restraints upon the alienation of a legal life estate void, and such, we think, is the

correct view, the view supported alike on principle and authority. *Brandon* v. *Robinson,* 18 Ves. 429; *McCleary* v. *Ellis,* 54 Ia. 311; *McCormick Harvesting Machine Co.* v. *Gates,* 75 Ia. 343; *Henderson* v. *Harness,* 176 Ill. 302; *Todd* v. *Sawyer,* 147 Mass. 570; *Butterfield* v. *Reed,* 160 Mass. 361; *Ehrisman* v. *Sener,* 162 Pa. St. 577; *McClure* v. *Cook,* 39 W. Va. 579, 586; Gray, Restraints on Alienation, § 134; 2 Jarman on Wills (6th Ed.) p. 1495; 24 Am. & Eng. Enc. Law 870. The law goes sufficiently far in sanctioning the removal of property from the field of commercial and business intercourse and exchange when it sustains the inalienable equitable life estates known as spendthrift trusts. It should not further extend the doctrine to include legal life estates, thus increasing the opportunities by which the exercise of the power of alienation may be unduly restricted and property lose its qualities as an article of trade and exchange. Hence we are of the opinion that the deed from John Carr to his children was valid, unless made and accepted in pursuance of a plan to defraud creditors.

Though named a defendant and duly summoned, John Carr did not demur or answer or otherwise appear and the bill was taken *pro confesso* as to him; nor did he testify in the case. He therefore waived proof of the fraud charged; indeed presumably admitted it. But his admission cannot be used against his co-defendants who in their answer have denied the fraud charged. It binds him but not necessarily them.

Does the burden rest upon the plaintiff to show the fraudulent intent and purpose of the deed and the wrongful participation of the grantees therein with knowledge of such designs, or on them to show their innocency or lack of knowledge of such intention and purpose on his part? It is unnecessary to locate that burden definitely if the evidence introduced is sufficient to support the decree of which complaint is made. If it is, it matters not who assumed that burden. For virtually the decree adjudged against the grantees upon the question of scienter and participation in the fraudulent design contemplated by the deed, if indeed it is fraudulent.

After a thorough examination of the case as presented, we are convinced that nothing in it warrants a conclusion other

than that expressed in the decree. Bennett, who on the same day levied on property found on the land executions based on three judgments recovered, one by N. J. Carr, one by Sarah A. Haddix and one by Jacob W. Carr against John Carr for money paid by them chargeable to him to satisfy the breach of warranty in the deed in which they united, testified to a conversation had between him and the judgment debtor, when he, Bennett, was about to levy on the same property an execution then in his possession based upon the judgment recovered by Mrs. Kerns, to the effect that he (John Carr) had "turned over" his property which still remained on the place to his grantees to enable them to "get rid of" the three executions theretofore levied on it, wherefore he owned no property on which to levy the fourth writ. To Columbus Kerns on another occasion he said that he had borrowed the money to pay the judgments on which these executions were issued, and avowed an intention not to reimburse his brothers and sisters for the money expended by them in discharging a liability incurred by him and them jointly. This testimony passed without challenge and, if true, John Carr voluntarily deprived himself of all the property he possessed, real and personal, within the time intervening between the dates of the first three judgments and the fourth or last one. He therefore wrongfully attempted to consummate his avowed intention by divesting himself of a valuable life estate in three hundred acres of land and of personal property worth several hundred dollars, though in the latter his wife and some of his children, it is true, do set up some claim the validity of which is not clear. And from the grantees, his children, comes not a word of explanation other than that they paid the judgments recovered prior to the date of the deed and furnished the money used therefor out of their own wages earned and accumulated by two of them as common laborers, the other one as an instructor of music in a small college, or borrowed and repaid the balance some of which went to their grantor.

They do attempt to deny knowledge of any vice or fraud in the transactions or conscious participation therein to accomplish such fraudulent design. There is but slight, if any, real foundation in the proof upon which to predicate in-

nocency of the object to be accomplished by executing the deed. Besides the evidence of John Carr himself it seems clear that they were not ignorant of plaintiff's claim against him. They were advised of the defect in the title of the land or timber granted to the Jennings; of the pendency of a controversy between them, him and his brothers and sisters, in regard thereto; of the adjustment of that controversy; of the actions brought by their uncles and aunts against their father to compel reimbursement; of the judgments recovered therein and the issuance and levy of the executions. They resided with their father on the land and were absent from it but occasionally and then only temporarily. Moreover, they partially admit knowledge of these inculpatory circumstances, and if they were not cognizant of all the attendant incidents, their opportunity to know what transpired is inconsistent with their professed lack of information.

We are therefore of opinion to affirm the decree and remand the cause for further proceedings therein.

*Affirmed, and remanded.*