KOPPERS COAL COMPANY *v.* DIXIE FIRE INSURANCE COMPANY

KOPPERS COAL COMPANY *v.* NATIONAL FIRE INSURANCE COMPANY

KOPPERS COAL COMPANY *v.* NEW YORK FIRE INSURANCE COMPANY

KOPPERS COAL COMPANY *v.* QUEEN INSURANCE COMPANY OF AMERICA

(Nos. 8852, 8853, 8854, 8855)

Submitted April 18, 1939. Decided May 16, 1939.

*Steptoe & Johnson, Stanley C. Morris, W. E. Miller* and *W. F. Wunschel,* for plaintiffs in error.

*Mahan, Bacon & White,* for defendant in error.

KENNA, JUDGE:

These four proceedings of notice of motion for judgment were brought in the Circuit Court of Fayette County by Koppers Coal Company against the defendant insurance companies for the purpose of recovering under fire insurance policies issued by each upon a storeroom in the town of Smithers upon a lot which is now owned by the plaintiff company. Separate specifications of defense were filed, and the cases were submitted to the trial judge in lieu of a jury under an agreed statement of fact in each. On May 3, 1938, judgments were entered in the Circuit Court against the following defendants in the following amount: Queen Insurance Company of America, $963.71; Dixie Fire Insurance Company, $1170.88; National Fire Insurance Company of Hartford, $1170.88; and New York Fire Insurance Company, $873.42.

Subsequent to the granting of these writs, counsel representing the parties entered into a stipulation, with the approval of this Court, consolidating the four cases which, subject to a slight amplification in the Dixie Fire Insurance Company and National Fire Insurance Company cases, involve identical questions. It will be unnecessary to discuss the additional question involved in the two cases just mentioned, because we think that the

260

four cases rest upon the same fundamental question which arises before that question is reached.

Due to a corporate consolidation, there was a change of the plaintiff's corporate name, but this fact need not be considered.

On October 18, 1935, Mario Lodato executed a written lease of a storeroom in Smithers to the plaintiff company, the lease to become effective December 1st, and granting to the lessee the right to purchase the store building within one year from that date for the sum of ten thousand dollars, subject to certain specified adjustments.

Apparently the leased building was free from encumbrances, when plaintiff became the lessee and occupant. Shortly thereafter, on November 21, 1935, a deed of trust to H. L. Carney, trustee for the Charleston National Bank, was executed by Lodato and wife. The indebtedness upon the note secured at the time of the occurrences giving rise to these controversies amounted to $4,854.17. Between nine and ten o'clock on the morning of November 28, 1936, Koppers Company exercised its right to purchase the storeroom, and, acting through F. E. Holman, district manager, accepted delivery of a general warranty deed and delivered to Lodato their check for eight thousand, eight hundred dollars subject to the agreement that the amount secured by the deed of trust due the Charleston National Bank, augmented by an unsecured note of four hundred dollars owed that Bank by Lodato should be paid. The payee indorsed the check and turned it over to B. E. Claypool, cashier of the Merchants National Bank at Montgomery, who, in turn, by telephone got at once in touch with the Charleston National Bank and informed it that he held the Koppers Coal Company check in the amount of eighty-eight hundred dollars and had been advised by that company and the payees from the proceeds of that check to pay to the Charleston National Bank a sum sufficient to cover Lodato's deed of trust indebtedness, together with interest, as well as the four-hundred dollar note. Claypool requested the Charleston National Bank to execute a release of its trust deed,

and, together with the notes of Lodato and sight draft for a sum sufficient to meet the indebtedness they represented, to mail it to the Merchants National Bank. The Charleston National Bank promptly complied with these instructions, and on the same day deposited in the mail an executed release, the notes, sight draft and the insurance policies upon which these proceedings are based to which had been attached the standard mortgagee clause. These policies were payable to Lodato.

November 28th having been Saturday, the envelope containing these papers did not reach the Merchants National Bank until after the bank opened Monday morning, November the 30th. In the meantime, at about five-thirty A. M. a fire had destroyed the storeroom.

A short- while after the papers were received by the Merchants National Bank of Montgomery, Lodato called the Charleston National Bank and informed it of the fire, and was informed by the Charleston National Bank that the release, along with the draft, notes and insurance policies had been mailed on Saturday. Thereafter, on the same morning, Lodato went to the Merchants National Bank and got from Claypool his notes stamped "Paid" and a duplicate deposit slip for the balance of the fund represented by the eighty-eight-hundred-dollar check of the Koppers Coal Company. The release of the trust deed, together with the insurance policies, was delivered by the Merchants National Bank to the manager of the plaintiff company on Monday, November 30th, but the release was not recorded until February 23, 1937, a date subsequent to the denial of liability under the insurance policies by the defendant companies. The deed from Lodato and wife to the plaintiff company was not recorded until April 27, 1937.

The insurance policies in the possession of the Charleston National Bank mailed by it to the Merchants National Bank at Momtgomery and delivered to the Koppers Coal Company were written by the following companies in the following amounts: Queen Insurance Company, $1,000.00; New York Fire Insurance Company, $2,000.00;

National Fire Insurance Company, in effect November 29, 1936, $1,250.00, and Dixie Fire Insurance Company, in effect November 29, 1936, $1,250.00. The policies were all issued to Mario Lodato and all bore the standard mortgage clause in favor of the Charleston National Bank. The premiums on three of the policies had not been paid but were tendered by the Koppers Coal Company December 22nd to Mountain State Insurance Agency, which had written the insurance, and payment declined. No notice was given by any person to the defendant insurance companies, or either of them, of the transfer of the equity of redemption on November 28, 1936, nor did the Charleston National Bank, or any other person, notify the insurance companies, or either of them, of the release of the trust deed securing the note payable to the Charleston National Bank until after the fire occurred. Proofs of loss were filed in compliance with the terms of the policies.

The stipulation of fact under which these cases were submitted contains a provision that it and the exhibits filed therewith are to be regarded as constituting all of the material facts upon which the decision of the four cases rests.

Without going into detail, it may be concisely stated that the Koppers Company can claim no right of recovery upon the face of the policies. That is not contended. It was neither the insured nor the mortgagee in conformity with the policies' stipulations. Therefore, the circuit judge must have based his holding upon the theory that Koppers Coal Company stood in the shoes of either the insured or of the mortgagee who were the only two persons entitled to recover by the face of the policies. In other words, was the Koppers Coal Company subrogated to the interest of either so that it is entitled to recover in a notice of motion proceeding?

Lodato had no remaining interest when the fire occurred. He had been paid for the property and had delivered a conveyance to the Koppers Coal Company. None of the insurance companies had been notified of that fact

preceding the fire. Koppers Company would have no right to recover if it stood in Lodato's place. This leaves only the question of whether Koppers can be subrogated to the rights of Charleston National Bank.

It is questionable whether an actual assignment, after total loss, from an insured mortgagee would vest the assignee with more than the mortgagee's then right of recovery. But in this instance, the Charleston National Bank on Saturday, approximately forty-eight hours before the fire, had executed a release of its lien which, along with the insurance policies and a sight draft, had been deposited in the mail, addressed to the Merchants National Bank. Assuming for the sake of argument that this release did not take effect until after the fire occurred on Monday morning, when it was delivered to the bank in due course, and assuming further that the Charleston National Bank was not bound by the conduct of the Merchants National Bank, as its agent acting pursuant to telephone instructions on Saturday, it is still difficult to see how Koppers would be entitled to subrogation. The fact yet remains that the Merchants National Bank had been authorized to pay the Charleston National Bank's indebtedness out of the sum of eighty-eight hundred dollars in its hands and paid to it, not by Koppers, but by the Lodatos in order to carry out their understanding with Koppers. In other words, the Merchants National Bank was simply what may be called the escrow agent of the Lodatos and of the Charleston National Bank for the purpose of settling the trust deed indebtedness for the one and of receiving payment for the other. Without question the payment was made on Saturday, November 28, because, on that day Koppers Company's check for eighty-eight hundred dollars was deposited in the Merchants National Bank in Lodato's account, subject to instructions to the escrow agent to pay the Charleston National Bank's indebtedness.

But supposing that the mortgagee's interest was acquired by the person vested with the fee simple title to the insured property, would there not be, upon the law

side of the court, a merger of its mortgage lien with its fee title? *Turk* v. *Skiles,* 45 W. Va. 82, 30 S. E. 234; *Sullivan* v. *Saunders,* 66 W. Va. 350, 66 S. E. 497, 42 L. R. A. (N. S.) 1010, 19 Ann. Cas. 480; *Kerns* v. *Carr,* 82 W. Va. 78, 95 S. E. 606, L. R. A. 1918E, 568; 1 Minor on Real Property (2d Ed.), sec. 353. And would it then retain its insurable interest as mortgagee?

We are of opinion that the foregoing questions can not be reached in a notice of motion proceeding on the law side of the court. Even going so far as to concede, for argumentative purposes only, that Koppers Company is entitled to be regarded as a subrogee of a right of recovery vested in the Charleston National Bank, that determination would rest with a chancery court, and, except under a statutory requirement, could not be recognized in a court of law. *Fidelity & Deposit Co.* v. *Shaid,* 103 W. Va. 432, 442, 137 S. E. 878, 882; *Meyer* v. *Mintonye,* 106 Ill. 414; *Moore* v. *Watson,* 20 R. I. 495, 40 A. 345; *Rea* v. *Keller,* 215 Ala. 672, 112 So. 211; *McIlvane* v. *Big Stony Lumber Co.,* 105 Va. 613, 54 S. E. 473; Sheldon on Subrogation (2d Ed.), sec. 4; 5 Pomeroy's Equity Jurisp. (2d Ed.), sec 2349.

The quotation from the case of *McClaskey* v. *O'Brien,* 16 W. Va. 791, 850, contained in the brief of defendants in error for the purpose of sustaining the contention that subrogation is a principle recognized on the law side, is rather inaccurate. The quoted language was not the language of this Court, but was a part of the opinion in the case of *Moore* v. *Beason,* 44 N. H. 215, which this Court quoted in the *McClaskey* opinion, rendered in a chancery cause where the question of subrogation being a principle applicable on the law side did not arise.

A clear statement of the definition of subrogation will be found in the first syllabus of the case of *Bassett* v. *Streight,* 78 W. Va. 262, 88 S. E. 848, which also was a chancery proceeding.

It is unnecessary to differentiate between the Dixie Fire Insurance Company and the National Fire Insurance Company cases and the other two cases because of

the difference that the policies of the named companies were issued to become effective November 29th, the day preceding the fire. Recovery in all four cases rests primarily upon the alleged right of subrogation which we think is not a principle recognizable on the law side of the court.

For the foregoing reasons, in all four cases we reverse the judgments of the Circuit Court of Fayette County, set aside the trial court's findings and remand the cases.

*Reversed and remanded.*