## Stillman's Executors *vs.* Stillman and others.

1. A mortgage given by a partner, after the failure of the firm, to secure a debt justly due to an individual creditor, is not necessarily tainted with fraud, by the fact that no charge was ever made or bill presented until the mortgagor was alarmed by prospective embarrassments, and that the account was made out, and charges agreed upon for this very mortgage.

2. A subsequent or even cotemporaneous attempt to convey or encumber property, so as to delay creditors, cannot affect a mortgage fairly given to secure a *bona fide* creditor.

3. The purchase of a mortgage by the executors of the mortgagor, where the mortgaged premises are owned by a third party, does not satisfy it.

4. One may purchase his own mortgage on land that he has sold, and although such purchase may render the bond unavailing, yet where lands are conveyed subject to the mortgage as part of the consideration, the mortgage is the principal security, and even if the obligor pay the bond, he is entitled to be subrogated as to the mortgage, and to be repaid out of the land what he has paid on his own bond.

5. Where mortgaged premises are conveyed subject to a mortgage, and the grantee conveys the premises in two parcels, and the parcel last conveyed is released from the mortgage, the other parcel must pay such proportion of the amount due on the mortgage, as its value bore to the value of the whole tract at the time of the conveyance of such parcel.

---

This cause was argued upon bill, answer, replication, and proofs.

*Mr. Williamson* and *Mr. E. W. Runyon*, for complainants.

*Mr. Keasbey*, for defendants.

THE CHANCELLOR.

The bill is to foreclose a mortgage given by Thomas B. Stillman, the complainants' testator, for about $1700, to Charles H. Stillman, on the first of September, 1857. This mortgage was assigned to the complainants by C. H. Stillman, after the death of their testator. In a short time after giving the mortgage, T. B. Stillman conveyed the mortgaged premises to C. A. Minor, who conveyed part to Joseph Stillman; both these conveyances were made expressly subject to this mortgage. Minor conveyed the residue of the mortgaged premises to Susanna, wife of Thomas; after his death, she conveyed part to one Ackerman, and another part to the complainants as executors. The complainants released the part conveyed to Ackerman from the mortgage.

The suit is against the heirs of Joseph Stillman, who died in 1860, intestate, and is to foreclose and sell the part con-

veyed--to him. The defence is, that the mortgage was without consideration, and was made to defraud the creditors of Thomas, also that it is satisfied by being assigned to the complainants, executors of the mortgagor.

The only evidence offered to show the consideration of the mortgage, is the testimony of Charles H. Stillman. He testifies that he was a brother of Thomas; that Thomas was one of the firm of Stillman, Allen & Co., who carried on the Novelty Iron Works, in the city of New York; that at the request of Thomas, and with the understanding that he should be paid for it, he took charge of his brother's estate at Plainfield, and spent a good deal of his time about his business, about one-fifth of his time; that he was at that time, by his practice as a physician, making about $3000 a year; that after the failure of the firm in August, 1857, Thomas, although he had retired from the firm a year before its failure, fearing that he might be liable for the debts, was anxious to secure his individual creditors, and requested him, Charles, to present his account; that he made out the account for which this mortgage was given, by charging $500 yearly for his services, a sum agreed upon at that time between him and Thomas, as a proper compensation, and charging the money he had expended in the affairs of Thomas; and he swears that this debt was justly due to him. This proof, if true, clears the mortgage from any imputation of fraud. But the defendants attempt to impeach the testimony of Charles, by a letter which he wrote to one of them in 1868, while he held the mortgage, and by two letters written by Thomas, after he had given the mortgage to Charles. These letters do not show any fraud in giving this mortgage, or in any way conflict with the testimony of Charles as to the consideration. It may be inferred from them, that two other mortgages, one for $5600, given to Charles, and one for $4500, given to John Harris, ten days after the mortgage in question, were given to delay the creditors of the firm in reaching the property of Thomas. But a subsequent or even cotemporaneous attempt to convey

or encumber property so as to delay creditors, cannot affect a mortgage fairly given to secure a *bona fide* creditor. Some suspicion is thrown over the *bona fides* of the debt to Charles, by the fact that no charge was ever made, or bill presented, until Thomas was alarmed by prospective embarrassments, and that the account was made out, and the charges agreed upon for this very mortgage. But it was natural that a man of large wealth and extended business as Thomas was, should ask his brother to take charge of his property and affairs in the country, with the understanding of both, that proper compensation should be made, and without having any price agreed upon. Thomas had no children, and might have designed to reward Charles by a munificent gift or legacy. And when a crisis arrived unexpectedly, such that the power of making compensation might be taken away unless done immediately, there was no fraud in forthwith agreeing upon a sum as compensation, and securing it by mortgage. I see no sufficient reason to discredit the positive evidence of Charles as to the whole transaction.

The transfer of the mortgage to the executors of the mortgagor does not satisfy it. The land was owned by a third person, and the mortgage was a valid encumbrance upon it. One may purchase his own mortgage on land that he has sold, and although such purchase may render the bond unavailing, yet where lands are conveyed as these were, subject to the mortgage as part of the consideration, the mortgage is the principal security, and even if the obligor pays the bond, he is entitled to be subrogated as to the mortgage, and to be repaid out of the land what he has paid on his own bond.

The lands of the defendants are subject to this mortgage, but only to their proper share of it. This parcel was separated from the whole by the conveyance of Minor to Joseph Stillman, November 25th, 1857; that was made expressly subject to this mortgage. The payment of it was not assumed by the grantee. This parcel must pay such proportion of

the amount now due upon the mortgage, as its value bore to
the value of the whole tract at the time of that conveyance.
This proportion was fixed by that conveyance, and cannot be
changed by any subsequent change in the relative value of
the parcels.