SAMUEL H. BAKER *vs.* NORTHWESTERN GUARANTY LOAN COMPANY.

December 9, 1886.

**Mortgage—Assignment by Mortgagee to Mortgagor, and Reassignment.**—M. executed to defendant certain notes, and mortgages of land to secure the same, and subsequently conveyed the lands to W., subject (as expressed in the deed of conveyance) to the mortgages. Thereafter defendant "sold and assigned" the notes and mortgages to M., who subsequently sold and reassigned the same to defendant. *Held,* that the sale and assignment of the notes and mortgages by defendant to M. did not operate to pay and discharge the same, but that they remained in force in M.'s hands, so that it was competent for him, as against W. and his privies, to transfer them unimpaired to defendant.

**Corporations — Contracts Ultra Vires — Who may Impeach.**—*Held,* further, that if the acts of defendant, ("a corporation organized, existing, and acting under and pursuant to the laws of this state,") in dealing with the mortgages, were *ultra vires,* that is the concern of the state, and not of a private person not being a stockholder.

Plaintiff brought this action in the district court for Hennepin county to determine defendant's adverse claim to vacant lands. The defendant, in its answer, alleged that on November 20, 1884, the lands were owned in fee by one Menage, and the other transactions recited in the opinion. A demurrer to the answer was overruled by *Rea,* J., and plaintiff appealed.

*J. H. Bradish,* for appellant.

*Chas. J. Bartleson,* for respondent.

BERRY, J. November 20, 1884, Menage executed to defendant certain notes, and, to secure the same, mortgages of lands owned by him, conditioned for the payment of the notes in five years. November 28, 1884, Menage conveyed the lands to Walcott, subject (as expressed in the deed of conveyance) to the mortgages mentioned. April 23, 1885, defendant "sold and assigned" the notes and mortgages to Menage. July 8, 1885, Menage assigned a portion of the notes and mortgages to Pitman. January 21, 1886, Pitman reassigned the same

to Menage, and thereafterwards Menage "sold and reassigned" all'
the notes and mortgages to defendant.

The effect of these transactions is this: In legal substance, Wal-
cott's purchase was of a right or equity of redemption.   He took sub--
ject to the mortgages, so that he is to be regarded as having pur--
chased upon the basis of deducting the amount of the mortgages from
the full price or value of the lands, and paying the remainder as the-
consideration of his deed.   As between Walcott and Menage, this-
state of facts made the lands the primary or principal fund for the-
payment of the mortgages.   *Stillman* v. *Stillman*, 21 N. J. Eq. 126;
*Welton* v. *Hull*, 50 Mo. 296; *Greenwell* v. *Heritage*, 71 Mo. 459; *Ba-
ker* v. *Terrell*, 8 Minn. 165, (195.)

The equity of this conclusion must be apparent, for it is in exact
accordance with the contract of the parties, and any other would per--
mit Walcott not only to take and hold what he never purchased, but
to do so in disregard of the express terms of his purchase.   Author-
ities *supra*.   Of course, if Menage saw fit, by his voluntary act, to re-
lieve the lands of the charge of the mortgages for Walcott's benefit,
and for the purpose and with the intent of making him a gift to that
extent, it would be entirely competent for him to do so, so far as his
own rights were concerned; but this concession does not trench upon
what we have said above.

But it is contended that the assignment of his own notes and mort-
gages to Menage operated as payment and discharge of the same.
This might be so at law, but equity, disregarding forms and strictly
legal consequences, will work out a different result, and one conso--
nant with the real purposes and intentions of the party, if necessary
to protect his interests, and save his just rights.   The cases in which
it will do this are many.   A familiar one is that in which it refuses-
to treat an equitable as merged in a legal estate in the same hands,.
and *vice versa*.   *Davis* v. *Pierce*, 10 Minn. 302, (376;) 2 Story, Eq.-
Jur. (13th Ed.) § 1035*b*, and notes; Bisp. Eq. § 160.   For this as:
well as other analogous cases, see *Stantons* v. *Thompson*, 49 N. H.
272; also *Adams* v. *Angell*, 5 Ch. Div. 634; and for an application
of the same general principle to the keeping alive of franchises re-

verted to the state, see *First Division, etc., R. Co.* v. *Parcher,* 14 Minn. 224, (297.)

For analogous reasons, in the case at bar, as, under his convey-ance to Walcott, Menage has the right to insist that, as between them and their privies, the lands are the primary and principal fund for the payment of the mortgages, equity will uphold the mortgages, and keep them on foot, even in Menage's hands, for the purpose of pre-serving this right, and making it available. See authorities first cited, especially *Baker* v. *Terrell.* That this would be in accordance with Menage's intention in purchasing his own notes and mortgages, and having them assigned to him, is sufficiently inferable from the fact of *purchase* and *assignment,* the fact that the purchase and assign-ment were made before the mortgages were due, and from Menage's relation to the mortgages after his conveyance to Walcott, and his consequent interest in keeping them alive. See *Davis* v. *Pierce, supra,* and *First Division, etc., R. Co.* v. *Parcher, supra.*

Upon this branch of the case our conclusion is, then, that the mort-gages were not discharged or extinguished by their purchase by and assignment to Menage, but still remained in force, though in his hands, so that, as against Walcott and the plaintiff, who is his privy, claiming only under him, it was competent for Menage to transfer them unimpaired to the defendant.

This brings us to the second ground of demurrer : that the defend-ant, a corporation, does not, in its answer, show that it was author-ized or had capacity to acquire the liens which it claims under the mortgages mentioned. That it is a "corporation, organized, exist-ing, and acting under and pursuant to the laws of Minnesota," and so was at the time of the transactions in question, is admitted by this demurrer. With the admission we are inclined to believe that, *prima facie,* the defendant would be presumed (*Pringle* v. *Woolworth,* 90 N. Y. 502, 509) to have been acting within its corporate power, and le-gally, in dealing with the mortgages, as some corporations are au-thorized to do under the laws of the state. But, however this may be, if the acts of the defendant in dealing with the mortgages are *ultra vires,* that is the concern of the state, not of a private person not a stockholder, like the plaintiff. *National Bank* v. *Matthews,* 98 U. S.

621; *National Bank* v. *Whitney*, 103 U. S. 99; *Merchants' Nat. Bank* v. *Hanson*, 33 Minn. 40, (21 N. W. Rep. 849.)

Order affirmed.