KAY *v.* CASTLEBERRY.

Opinion delivered July 10, 1911.

1. PRINCIPAL AND SURETY—CONSTRUCTION OF CONTRACT.—Where A agreed to sell land to B, and at B's request borrowed a sum of money for B, making the note and mortgage in his own name, the effect of the transaction was that A was surety for B, who was primarily liable for the debt. (Page 623.)

2. SUBROGATION—SURETY PAYING PRINCIPAL'S DEBT.—The general rule that one who pays a note, having no interest to protect, is not entitled to subrogation, has no application to the case where a surety pays the principal's debt, in which case the principal will be subrogated to the security held by the creditor. (Page 624.)

3. MORTGAGES—PURCHASE OF PROPERTY SUBJECT TO.—A grantee who takes a conveyance subject to a mortgage is presumed to have included the mortgage debt in the purchase price, and will not be permitted to dispute the validity of the mortgage. (Page 624.)

4. SAME—ASSIGNMENT TO MORTGAGOR AFTER SALE OF EQUITY OF REDEMPTION.—Where a mortgagor has sold his equity of redemption subject to the lien of the mortgage, he has the same right as any third person to purchase and take an assignment of the mortgage, and upon payment of a prior incumbrance to the holder thereof he would be entitled to be subrogated to his right and substituted in his place as respects the land. (Page 625.)

Appeal from Fulton Chancery Court; *George T. Humphries,* Chancellor; affirmed.

STATEMENT BY THE COURT.

W. M. Castleberry, a merchant at Salem, in Fulton County, Ark., on August 4, 1908, exchanged certain lands and a stone building situated thereon, in the town of Salem, with M. Kopelman, a merchant at Joplin, Mo., for a stock of goods owned by Kopelman. Kopelman at the time was financially embarrassed, his stock of goods being in the hands of a receiver. Castleberry gave the lands and stone building mentioned for the stock of goods, subject to the rights of Kopelman's creditors. Castleberry paid the creditors $8,000 in settlement of their rights, and took possession of the goods August 4, 1908. Kopelman requested Castleberry to borrow for him, on the stone building, the sum of $3,000. Castleberry borrowed this sum on the 26th day of August, from Godfrey, Frank & Company, of Memphis, Tenn., executing his note therefor, payable in eighteen months with interest at 8 per cent. per annum. The note was also signed by his

wife. He and his wife also executed, on the same day, a deed of trust to one C. W. Lobe, of Memphis, Tenn., as trustee, for the benefit of Godfrey, Frank & Company, embracing the lands and stone building which Castleberry had exchanged with Kopelman for the stock of goods. After negotiating the loan with Godfrey, Frank & Company, Castleberry conveyed the stone building and lands to Kopelman, subject to the deed of trust for three thousand dollars which he had executed to Godfrey, Frank & Company. Concerning the exchange that was made between appellee and Kopelman of the stone building for the stock of goods, and concerning the loan from Godfrey, Frank & Company, appellee testified as follows:

"Q. You were the owner of the stone building? A. Yes, sir. Q. You bought of Mr. Kopelman a stock of goods at Joplin, Mo.? A. Yes, sir. Q. What did you pay for the stock? A. We just made a lumping deal. The goods were not invoiced. Q. What was the value of that property, as estimated, that you were giving for that stock? A. There was no particular value or estimate on it. The goods were not invoiced, and he had a picture of the building, and it was simply an exchange. Q. You knew what the value of the goods were that you were getting? A. I had not gone through it, and it was a sort of a long shot. Q. At what price did you put said building in? A. Estimated anyway at $15,000. Q. Did you pay him anything besides the building? A. Nothing except the $3,000 in cash I got on the building for him. Q. You paid him the building and $3,000? A. I traded him the building. Q. Were you to give him the building and $3,000 for his stock? A. No, sir; I gave him nothing but the building."

And further appellant testified as follows:

"Q. I will ask you if some time about August 10 you negotiated a deal for a stock of goods with M. Kopelman? A. I did. Q. I will ask you if in this deal you were disposing of this large building to him? A. Yes, sir. Q. I will ask you if you negotiated a loan against that building at his instance and request? A. Yes, sir. Q. Just tell what were the conditions between you in reference to that loan, and who got the money. A. We were on a deal, and I took possession of that building the 4th of August, and in the deal, when we were closing the

deal, he insisted that, instead of taking the property straight, he wanted me to borrow for him $3,000 on the property, and make him a deed subject to this loan, which I did, and I secured the loan of $3,000 and paid it over to Kopelman. Q. You never received any part of that $3,000 yourself? A. No, sir."

And further:

"Q. I will ask you if you have not always considered this your deed, and not Kopelman's? 'A. I considered that—I am responsible for that all right. The property is responsible for it. This is the way I looked at it. Q. I will ask you if you made arrangements yourself to get this $3,000 and paid it to Kopelman? A. Yes, sir. Q. I will ask you if you ever intended for Kopelman to pay this note, or did he intend to pay it? A. I suppose he aimed to pay it if he could make a deal sufficient, but if not the property was to pay it, I suppose. Q. You never tried to get him to pay it? A. No, sir. Q. I will ask you if at the time you traded for said stock of goods it had been put in the hands of a receiver? A. Yes, sir; it was really in the hands of the receiver, and had been taken up by Burham, Hanna, Munger & Company, who paid Kopelman forty cents on the dollar, and I took the stock of goods and paid Burham, Hanna, Munger Dry Goods Company, $8,000 in money. Q. You traded this building over here for his interest in them? A. Yes. Q. After you traded them you negotiated this loan and turned him $3,000? A. Yes, sir; I took possession the 4th of August, and then it took me some time to get up the loan. Q. I will ask you while you signed this note here, and your wife signed it, if each executed that mortgage on this property over here at his request? A. Yes, sir. Q. You made a trust deed subject to this with him? A. Yes, sir; at his request. Q. You realized when you signed it that you were responsible for it, but at the same time you realized that he was making this property over here subject to this deed, and the property was worth the money? A. Yes, sir. Q. As far as Kopelman or Widner or anybody else is concerned, they have never paid any part of this deed? A. No, sir. Q. You were very willing to take these chances on Mr. Kopelman paying it? A. Yes, sir; I felt safe with the property in front of it. Q. You would never have made the deal had you not felt satisfied that the property was going to protect you; you never

would have assumed the liability unless you felt that the property —you would not have gotten behind Mr. Kopelman for anything individually? A. No, sir; not a cent."

On October 11, 1908, Kopelman conveyed the property to C. H. Widner, subject also to the deed of trust for $3,000. Widner in turn conveyed the property to Lehman Kay under a deed, which, among other things, contained the following clause: "This deed is made subject to a trust deed made to Godfrey, Frank & Company of Memphis, Tenn., for $3,000, as per mortgage record, J, page 487, the interest also subject to the taxes of 1909, and subject to cost in the foreclosure of above mentioned mortgage.'

On May 25, 1910, appellee instituted this suit to foreclose the deed of trust, making Kopelman and Widner parties defendant, who were constructively summoned. Appellant asked to be made a party defendant, which was done, and he answered the complaint of the appellee, setting up that he had purchased the property from Widner, and that appellee, being the maker of the deed of trust, had paid the same in full to Hogan, and had therefore extinguished his own debt, and thereby released the property from any loans of the mortgage or deed of trust. He also set up the claim for a certain cotton platform, which he alleged appellee had removed from the premises, and for certain fixtures, and also for rents.

The court made the following findings:

"That on the 26th day of August, 1908, plaintiff Castleberry executed to C. W. Lobe and Godfrey, Frank & Company, of Memphis, a trust deed in consideration of one dollar to secure a promissory note executed by W. M. and Annie C. Castleberry, for $3,000 and the real estate and store fixtures described in this deed; that the note was due; that W. M. Castleberry had sold and transferred his equity of redemption in the land, subject to the trust deed, to M. Kopelman; that Kopelman had sold the same to defendant Lehman Kay; that Godfrey, Frank & Company had, for a valuable consideration, transferred said note and trust deed to R. S. Hogan, and that said R. S. Hogan had, for a valuable consideration, transferred said note and trust deed to plaintiff W. M. Castleberry, after it was due. That all the assignees (grantees) from Kopelman to Kay had purchased said lands

charged with said debt. That plaintiff had paid said debt, not with a view of extinguishing said loan, but for the purpose of protecting his interests, and that the plaintiff should be subrogated to the rights of Godfrey, Frank & Company in said trust deed and note."

The court further found: "That there was due, principal and interest on the note, $3,068, and that plaintiff had erected cotton platform after he executed the deed to Kopelman; that the platform was of a temporary character, and that he had removed it from the premises." The court then decreed as follows:

"That plaintiff restore the fixtures he had removed at once, and take a receipt from the commissioner; that plaintiff be not charged with the cotton platform; that he be subrogated to all the rights and equities of Godfrey, Frank & Company in a trust deed and note; that he recover thereon the sum of $3,068, with interest at 8 per cent. from the date of the decree; that the amount be declared a lien upon the land and stone building and fixtures, and that, if same is not paid within sixty days, the property mentioned should be sold on a credit of three months. That all the money in the hands of the receiver be turned over to the clerk of the court, who was appointed commissioner to carry out the orders of the court. That the question of the cost of the receivership be continued until the next term."

Appellant Kay duly prosecutes this appeal from the findings and judgment of the court.

*Sam H. Davidson,* for appellant; *Lehman P. Kay* and *James A. Watson,* of counsel.

One who pays a note without any interest to protect is not entitled to subrogation. 104 Ind. 41; 3 N. E. 753; 97 Md., 598; 99 Am. St. R. 502; 101 Cal. 576; 184 Ill. 284; 112 Ky. 792; 93 N. W. 124; 32 S. W. 573; 49 S. W. 656; 84 Ark. 277. Subrogation will not be allowed in favor of one ultimately liable for the debt discharged. 124 Cal. 147; 120 Cal. 44; 72 Ia. 483; 72 S. W. 810; 103 Ky. 521; 43 La. Ann. 814; 31 Me. 392; 91 Md. 422; 37 Minn. 420; 18 R. I. 436; 33 S. C. 324; 53 Vt. 394; 8 Vt. 164; 15 Wis. 397; 10 Allen 466; 8 Allen 466; 121 Mass. 592; 7 N. Y. 121; 52 N. Y. Sup. Ct. 499; 67 Barb. 234. Appellee is not entitled to subrogation. 158 Ind. 595; 51 Ia. 156; 34 Me.

299; 70 Minn. 441; 41 Minn. 417; 8 Minn. 195; 71 Mo. 459; 50 Mo. 296; 58 N. H. 380; 7 Paige 591; *Id.* 248; 2 Johns Ch. 128; 3 Sandf. Ch. 584; 116 N. Y. 566; 6 Pa. Dist. 179; 15 W. Va. 867; 33 S. W. 592; 48 Ark. 258; 63 Ark. 282; 42 Ark. 197. A redemption by the mortgagor or his grantee extinguishes the lien. 65 Ark. 392; 120 N. C. 312; 58 Am. St. R. 789; 42 Ark. 503.

*J. L. Short* and *Manning & Emerson,* for appellee.

Equity will not permit appellant to dispute the validity of the mortgage. Pomeroy's Equity, vol. 3, § 1205. The lien is not extinguished by the assignment of the mortgage to the mortgagor unless the mortgagor has at the time the equity of redemption. 21 Mass. (4 Pick) 505; 36 Minn. 135; 30 N. W. 464; 41 Minn. 417; 43 N. W. 91. Appellee is entitled to subrogation. 116 N. Y. 566; 23 N. E. 1; 175 Mass. 115; 55 N. E. 889; 83 N. E. 1099.

WOOD, J., (after stating the facts). The court was correct in finding "that plaintiff had paid said debt, not with a view of extinguishing his lien, but for the purpose of protecting his own interests," and in holding "that the plaintiff should be subrogated to the rights of Godfrey, Frank & Company in said trust deed and note." The testimony shows that the loan from Godfrey, Frank & Company to appellee of the $3,000 was really made to appellee for Kopelman at Kopelman's request. Kopelman received the money, and Kopelman's property was mortgaged to secure it. The debt, as between appellee and his grantees, was primarily that of Kopelman's, and appellee was his surety. Appellee, in securing this loan, was acting for the accommodation of Kopelman. Of course, appellee, having signed the note, was also liable for its payment, but only in a secondary way, as surety; for, according to the agreement between himself and Kopelman, appellee was acting for the latter's benefit and binding Kopelman's property. The transaction between appellee and Kopelman was tantamount to a loan made by Godfrey, Frank & Company to Kopelman at the request of appellee. In equity, the intention of the parties to the transaction should be carried out, and undoubtedly it was the intention of Kopelman and the appellee that Kopelman should be liable for this loan of $3,000, and that his property, the stone building, which he had received from appellee in exchange for the stock of goods, should be subjected to the pay-

ment of the debt. Appellee, as we have stated, having signed the note and deed of trust, to be sure, would be liable to Godfrey, Frank & Company for the payment of the debt, and this fact, taken in connection with the agreement that he had with Kopelman, would justify him in acquiring the note and the deed of trust, and, having done so, he would be subrogated to the rights of the holder of the note and deed of trust. Subrogation is allowed to enable one, secondarily liable, who has paid the debt, to get the benefit of the mortgage security. 14 Current Law, page 902, and authorities in note. It is undoubtedly true, as a general rule, that a mere volunteer, one who pays a note without having any interest to protect is not entitled to subrogation. *Binford* v. *Adams,* 104 Ind. 41, 3 N. E. Rep. 753. But this rule has no application to the facts as shown by the testimony in this record; for the reason that appellee, being liable for the debt under consideration, did have an interest to protect, and could not, from any viewpoint, be considered as a mere interloper or volunteer. So far as the note and deed of trust are concerned, the debt appeared to be, and was, that of appellee as between him and Godfrey, Frank & Company; but as between Kopelman and appellee the plaintiff shows that it was the intention of both that the debt was primarily that of Kopelman, and that the property should be subjected to its payment, no matter into whose hands the same might pass. This is shown by the fact that the various conveyances of the property from appellee to Kopelman, and from Kopelman to Widner, and from Widner to appellant, had a clause therein subjecting the property conveyed to the payment of the debt evidenced by the note and secured by the deed of trust. The testimony warrants the conclusion that appellee, when he conveyed the property to Kopelman, did so with the understanding that Kopelman would be liable for the $3,000 debt which he (appellee) had previously executed a deed of trust to secure. The transaction was equivalent to a deduction by appellee of the mortgage debt from the price of the land to Kopelman, for both parties understood that Kopelman was to pay the debt, and that the lands included in the deed of trust were to be subjected to its payment. "A grantee who takes a conveyance subject to a mortgage is presumed to have included the mortgage debt in the purchase price, and is not, therefore, permitted to dispute the

validity of the mortgage." 3 Pom. Eq. Jur. § 1205. While there is no clause in the various conveyances making the appellee personally liable for the debt, there is a clause that we have stated showing that appellee and his grantors purchased the property subject to the mortgage debt, and therefore they are not in a position to oppose or defeat the rights of one who holds the prior incumbrance, either through rights of subrogation or by a straight out purchase thereof.

In *Pratt* v. *Buckley,* 175 Mass. 115, in a parallel case under the facts, the court said:

"The principal question in the case is whether the transfer of the note and the assignment of the mortgage to the original mortgagor, after the premises had been sold subject to the mortgage, constitute in law a discharge of the mortgage, so that it could not be enforced against the property. We think it very clear that they did not. When the estate was sold subject to the mortgage, the mortgage was left as a primary charge upon the land, although the grantee did not make herself personally liable for it by assuming it. The grantor, who was the maker of the mortgage note, was entitled to have the mortgaged property applied in payment of it. To protect her own interests, she might have taken an assignment of the mortgage and the debt and enforced the mortgage by foreclosure as effectually as if she was not the maker of the note."

"In all such cases the intention of the parties must control. Here there was no intention upon the part of appellee, when he acquired the note and mortgage from Hogan, to pay the debt and so discharge the deed of trust, but on the contrary to obtain the note and deed of trust in order that he might subject the property therein to the payment of the debt. *North End Savings Bank* v. *Snow,* 83 N. E. 1099. See also *Scribner* v. *Malinowski,* 111 N. W. 1032. "Where the mortgagor has sold his equity of redemption subject to the lien and mortgage, he has the same right as any third person to purchase and take an assignment of the mortgage, and upon payment of a prior incumbrance to the holder thereof he would be entitled to be subrogated to his right, and substituted in his place as respects the land." *Gerdine* v. *Menage,* 41 Minn. 417; *Baker* v. *N. W. Guaranty Loan Co.,* 36 Minn. 185, and cases cited; 27 Cyc. 1329, and cases cited in note.

By accepting the deed containing the clause quoted in the statement, appellant was advised of the conditions specified therein, and he should not be heard now in a court of equity to say that the property contained in the deed of trust should not be subjected to the payment of the debt for which it was pledged. The facts show that he purchased knowing that the debt secured by the deed of trust was to be deducted from the purchase price.

The facts, as we view them, give him no standing in a court of equity. The finding of the court as to the cotton platform is sustained by the evidence. It being shown that the property in the deed of trust is liable for the amount of the note, and it being further shown that appellee credited the note with the rents he was to pay appellant, should he seek to redeem, he would get the benefit of this payment, and can not complain.

It appears that there was no final judgment on the question as to the cost of the receivership, as that was continued by the court for further consideration.

The judgment upon the whole case is correct, and it is therefore affirmed.