### 10580.

### PRUDENTIAL INVESTMENT CO. v. CONNOR *ET AL.*

#### (112 S. E. 539)

MORTGAGES—FORECLOSURE DIRECTING DISTRIBUTION IS NOT CONDUCTIVE AS TO ISSUES ARISING AFTER ITS RENDITION.—A judgment foreclosing a mortgage and directing the manner of distribution of the proceeds of the sale is not *res adjudicata* as to the payment, from the proceeds, of judgment decreed to be liens upon the land, where the landowner claimed that an assignment of the judgments to plaintiff,

since the decree of foreclosure was rendered was procured by the mortgagor and judgment debtor and that the assignment to plaintiff was a pretense only so that the judgments had been extinguished.

Before McIver, J., Richland, March, 1920. Reversed and remanded.

Action by the Prudential Investment Company against Julia R. Connor, M. Smoak, Jr., and others, for the foreclosure of a mortgage. From an order requiring the Master to pay the surplus of the proceeds of the sale above the mortgages to plaintiff as assignee of judgments which had been decreed to be liens upon the land, M. Smoak, Jr., appeals.

*Messrs. M. S. Connor, Henry F. Jennings* and *A. D. McFaddin,* for appellant, cite: *Matter was before the Master on original order of reference, and proceeding to a conclusion with the testimony estops plaintiff from denying jurisdiction of the Master:* 81 S. C., 264. *Error of Judge McIver to pass an order which withdrew it from the Master:* 69 S. C., 198; 39 S. C., 452. *Judgment may be amended according to the rights of the case even after sale:* 21 S. C., 155. *Where there has been a change of conditions:* 97 S. C. 34. *Corporation cannot deny responsibility for acts of its officers chosen to administer its affairs:* 103 S. C., 403. *Nor can the controlling manager use name of a corporation to escape personal liability:* 1 L. R. A. (N. S.), 182-3, 176. *Corporation consisting of man and his family does not stand in position of an innocent third party:* 59 Ohio, 316. *Third party making absolute payment of a judgment in absence of understanding with the creditor that judgment is to be kept alive, judgment is satisfied:* 2 Freeman Judgts., Sec. 468. *Plaintiff had no higher equity than A. J. Bethea:* 68 S. C., 326. *Merger took place:* 64 S. C., 193; 60 S. C., 234; 15 R. C. L., Sec. 234; 47 S. C., 305; 106 S. C., 465. *Officer of a company cannot waive a right of the company in his own behalf:* 10 S. C., 298. *If order is*

*sustained, appellant would be entitled to a judgment against Bethea by way of subrogation to right of plaintiff to enforce payment to be made by said Bethea*: 15 R. C. L., Sec. 234; 25 R. C. L., Secs. 1313, 1314; 68 S. C., 439.

*Messrs. W. N. Graydon* and *W. T. Aycock,* for respondent.

March 11, 1921.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

There are a great many parties in this case, and to state the interest of each party would produce confusion and obscure the questions involved. Only such facts will be stated as are necessary to understand the questions.

The appellant Smoak took title to a certain lot of land in the city of Columbia. This land was subject to the liens of certain mortgages and judgments. The mortgage executed by A. J. Bethea was assigned to Prudential Investment Company. Mr. Bethea was the president of this company and also owned the large majority of the corporate stock. The judgments set up were judgments against Bethea. The plaintiff foreclosed its mortgage. The judgment of foreclosure provided for a sale of the mortgaged premises, the payment of the mortgage debt, and out of the surplus the payment of the judgments. After the decree was taken, Mr. Bethea, claiming to act for the plaintiff, gave his individual checks to the judgment creditors and took an assignment of the judgments of the plaintiff corporation. The appellant Smoak objected to the payment of the judgments out of the surplus, on the ground that Mr. Bethea had paid for the assignment of the judgments with his own money, that the judgments were paid, and the assignment was a mere pretense. The appellant was the owner of the equity of redemption and claimed the surplus freed from the liens of the judgments, which he claims had been paid by the judgment debtor, Mr. Bethea.

The Master took testimony in the case, attended by the attorneys for both sides; but the attorneys for the plaintiff withdrew from the references and applied to the Court of Common Pleas for an order requiring the Master to pay the judgments to the plaintiff, as assignee of the judgments. The trial Judge granted the order on the ground that the matter was *res adjudicata,* inasmuch as the payment of the judgments had been decreed by the judgment of foreclosure.

The only question proper for decision at this time is: Was the matter *res adjudicata?*

Stripped of the unnecessary facts, the question is a very simple one. Conditions had changed since the judgment was rendered. That there had been a change of conditions since the judgment was rendered is admitted by both sides. The judgment of foreclosure could not have provided for the payment of the judgments to the plaintiff, because the plaintiff did not at that time own the judgments. The order (appealed from) to pay the judgments to the plaintiff included necessarily the fact that there was a valid assignment of the judgments to the plaintiff. If the Court had jurisdiction to declare the assignments valid, it had also the jurisdiction to declare the assignments invalid. The appellant claimed that the assignments were invalid because Mr. Bethea had paid the judgments with his own money and that the assignment was practically to Mr. Bethea himself. Mr. Bethea was the judgment debtor. Was the money paid Mr. Bethea's own money? Was the assignment only pretensive? The order appealed from practically decides that question adversely to the appellant, but does so on the theory that the matter is *res adjudicata,* and he is not at liberty to decide the question at all.

The judgment is reversed, and the case remanded to the Court of Common Pleas to try the question of the validity of the assignments of the judgments to the respondent.

MR. CHIEF JUSTICE GARY and MR. JUSTICES WATTS and COTHRAN concur.

*On Petition for Rehearing*

MR. JUSTICE FRASER: The opinion in this case determines no ultimate rights. It simply holds that the judgment for foreclosure and sale is not *res adjudicata* as to the things that may have happened since the date of the decree, and the case was remanded to determine the effect of subsequent transactions, and no finding has been made as to the transactions or their effect.

The petition is therefore dismissed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur.

MR. JUSTICE COTHRAN: I do not think that it made a particle of difference whether the money paid for the assignments of the judgments was furnished by Bethea or not, and for that reason think that the judgment of the Circuit Court should be affirmed. See opinion on this petition.

MR. JUSTICE COTHRAN: The opinion of the Court by MR. JUSTICE FRASER, concurred in by the other members of this Court, was filed on March 11, 1921. Thereafter the respondent filed a petition for a rehearing and secured a stay of remittitur.

I have again gone over this record and have become convinced that a material issue in the case has been overlooked by the Court, as I shall endeavor to show. I therefore withdraw my concurrence in the opinion filed and favor a rehearing.

It is but due to the Justice who wrote the opinion, and to the others who concurred in it, including myself, to say that the matter which has controlled my judgment was not suggested by counsel for respondent, so far as I am informed; in fact, I have not been furnished with any printed brief from them, if indeed any was filed.

The contest is over a balance of $2,912.45, remaining in the Master's hands, after foreclosure and sale and the pay-

ment of two mortgages which were conceded to be first and second liens upon the property.

The plaintiff claims said balance as the assignee of certain judgments which are decreed to be liens upon the property, junior to said mortgages, and directed by the decree to be paid out of the proceeds of sale.

The defendant, M. Smoak, Jr., the owner of the legal title at the time of the sale, claims said balance upon the ground that, after the decree of foreclosure and before the sale thereunder, the judgments, by virtue of which the plaintiff claims the balance, were in fact paid off by the judgment debtor; that said payment discharged the liens of the judgments, the effect of which was to create a surplus to which he as the owner of the land was entitled; that the assignment to the plaintiff of these judgments were pretensive.

A determination of the issues involved in this appeal requires a review of a maze of business transactions and judicial proceedings.

Prior to September 2, 1913, the defendant Andrew J. Bethea was the owner of a certain tract of land near Gadsden, S. C., containing 305 acres. On that day he executed his note secured by a mortgage upon the tract, to J. B. McLaughlin, for $3,500, payable January 1, 1916, with interest at 7 per cent. (whether from date or maturity is not stated), the interest upon which appears to have been paid up to September 2, 1916, from which date by agreement the rate of interest was increased to 8 per cent.

On December 6, 1913, Bethea executed his note, secured by a second mortgage upon this tract, to Ada B. McLaughlin, for $1,300, the maturity date and rate of interest of which are not stated in the record for appeal. This mortgage was subsequently assigned to the Commercial Bank of Columbia and by it, at a later date, prior to the sale, to the plaintiff, Prudential Investment Company.

On July 27, 1916, the Bank of Columbia entered judgment against A. J. Bethea for $2,072, with interest from July 17, 1916.

On October 7, 1916, Bethea conveyed the tract to J. B. Stinespring, the latter assuming the payment of the McLaughlin mortgages, and taking the land subject to the judgment of the Bank of Columbia, above stated, which was a lien upon it.

On October 23, 1916, T. W. Berry entered judgment against A. J. Bethea for $918, with interest from September 20, 1916.

On October 23, 1916, Columbia Savings & Trust Company entered judgment against A. J. Bethea for $750 with interest from that date.

On March 31, 1917, J. B. Stinespring conveyed the tract to Julia R. Connor. It does not appear in this transaction that Julia R. Connor assumed the payment of the two McLaughlin mortgages which had been assumed by Stinespring, or of the three judgments hereinbefore referred to, though the land at the time of the conveyance to her was subject to the liens of said two mortgages and of the judgment of the Bank of Columbia for $2,072; the judgments in favor of T. W. Berry for $918, and Columbia Savings Bank & Trust Co. $750, having been entered subsequently to the conveyance from A. J. Bethea to J. B. Stinespring, the dates being, respectively, October 23, 1916, and October 7, 1916, did not become liens upon the land.

On or about January 21, 1918, the note and mortgage of A. J. Bethea to J. B. McLaughlin dated September 2, 1913, due January 1, 1916, for $3,500, was for value assigned to the plaintiff, Prudential Investment Company.

On March 6, 1918, the plaintiff instituted this action for the foreclosure of the $3,500 McLaughlin mortgage which had been, as stated, assigned to it on or about January 21, 1918. The parties defendant were the several alleged pur-

chasers and claimants of liens by mortgage and judgment
and A. J. Bethea.

The defendant Commercial Bank of Columbia answered
setting up its claim as assignee of the second McLaughlin
mortgage for $1,300.

The defendant Bank of Columbia answered setting up its
judgment for $2,072.

The defendant T. W. Berry answered setting up his judg-
ment for $918.

The defendant Columbia Savings Bank & Trust Com-
pany answered setting up its judgment for $750.

The defendant, Julia R. Connor, answered the original
complaint setting up ownership of the land, but did not an-
swer the amended complaint for the reason, as will appear,
that she had in the meantime conveyed the land to the de-
fendant M. Smoak, Jr.

The defendant M. Smoak, Jr., answered neither the ori-
ginal nor the amended complaint. It is assumed that, hav-
ing bought the land from Julia R. Connor after the com-
mencement of the suit, he was not originally a party thereto.

The other defendants answered neither the original nor the
amended complaint.

On October 12, 1918, Julia R. Connor conveyed the tract
to M. Smoak, Jr. In this transaction it does not appear that
M. Smoak, Jr., assumed the payment of the McLaughlin
mortgages, which had been assumed by Stinespring, or of
the three judgments hereinbefore referred to, though the
land at the time of the conveyance to him was subject to
the liens of the two mortgages and of the judgment of the
Bank of Columbia for $2,072; the judgments of Berry and
of the Columbia Savings Bank & Trust Company not hav-
ing, for the reasons above stated, become liens upon the
land.

On November 1, 1918, the case was referred to the Mas-
ter to hear and determine all issues of law and fact.

4 S. C.—120.

On May 8, 1919, the Master filed .his report, ascertaining the amount due to the Prudential Investment Company upon the $3,500 McLaughlin mortgage and the amount due to the Commercial Bank upon the second McLaughlin mortgage for $1,300; these being respectively the first and second liens upon the property. He also reported:

"That the judgments set up by the defendants in said cause are now and constitute liens on the premises as described in the complaint according to their respective dates of entry."

In passing, we remark that evidently the Master overlooked the fact that the Berry judgment and the Columbia Savings Bank and Trust Company judgment were entered subsequently to the conveyance of A. J. Bethea to J. B. Stinespring and were not for that reason liens upon the land. The defendant Smoak, however, not having excepted to said report, is concluded thereby.

On June 9, 1919, there being no exceptions to the Master's report, the Circuit Judge, Hon. W. H. Townsend, passed a decree of foreclosure. He confirmed the Master's report; sets out the amounts due, respectively, upon the first and second mortgages; renders judgment in favor of the Prudential Investment Company against J. B. Stinespring for $4,428.81 with interest from May 8, 1919; renders judgment in favor of Commercial Bank for $1,632.27 with interest from May 8, 1919, against J. B. Stinespring and A. J. Bethea; renders judgment in favor of A. J. Bethea against J. B. Stinespring for such sum as Bethea might be required to pay on account of the second McLaughlin mortgage, assigned to Commercial Bank; orders sale in August, 1919; and directs .application of the proceeds, after payment of costs, taxes, and expenses, as follows:

(1) To the mortgage claim of Prudential Investment Company as assignee of the first McLaughlin mortgage of $3,500.

(2)   To the mortgage claim of Commercial Bank as assignee of the second McLaughlin mortgage of $1,300.

(3)   To the judgments proved in order of their priority as fixed by the Master's report.

(4)   The surplus, if any, to be disbursed according to law.

Before the sale ordered for August, 1919, was had, the following transactions took place:

On July 11, 1919, Columbia Savings Bank & Trust Company assigned to E. S. Dreher one-fourth interest in a certain judgment obtained by it against Andrew J. Bethea and others.

On the same day, E. S. Dreher, in consideration of $933.71, assigned what had been assigned to him by the Columbia Savings Bank & Trust Company to the plaintiff, Prudential Investment Company.

On July 12, 1919, T. W. Berry, in consideration of $1,093, assigned to the plaintiff, Prudential Investment Company, the judgment held by him for $918 against A. J. Bethea.

On July 14, 1919, Bank of Columbia, in consideration of $2,534.80, assigned to the plaintiff, Prudential Investment Company, the judgment held by it for $2,072 against A. J. Bethea.

Prior to the sale, exactly when does not appear, the Commercial Bank assigned to the plaintiff, Prudential Investment Company, the second McLaughlin mortgage, of $1,300, which had been assigned by Ada McLaughlin to it.

The sale was had on August 4, 1919, and the tract was bid off by A. J. Bethea for $8,500. He thereafter assigned his bid to plaintiff, Prudential Investment Company, which complied with the terms of sale and received from the Master a deed "on or about" October 14, 1919.

The Master filed his report on sales December 3, 1919, which showed that after the payment of costs and the two

McLaughlin mortgages, there was on hand the sum of $2,912.45, which he held subject to the order of the Court, on account of a notice served upon him by M. Smoak, Jr., on September 18, 1919, of the following tenor: That he was the owner of the land; that the judgments against A. J. Bethea outstanding at the time of the decree of sale and directed to be paid out of the proceeds of sale had since that date been paid by A. J. Bethea; that the effect of such payment was to discharge the liens of the judgments; and that the surplus of the proceeds of sale, after paying the costs and the mortgages which were first and second liens, respectively, should be paid over by the Master to him, as the owner of the land sold.

Thereafter, on February 6, 1920, the attorneys for the plaintiff and the attorneys for Smoak appeared before the Master. The attorneys for Smoak made claim to the balance of $2,912.45 in the Master's hands upon the grounds stated in the notice which had been served upon the Master September 18, 1919. The attorney for the plaintiff moved to dismiss the hearing upon the ground that the decree directed the payment of the judgments, and that, there having been no exceptions either to the Master's report or to the decree, the matter was *res adjudicata.* The Master overruled the motion, holding that the reference should continue in order to enlighten the Circuit Judge in passing orders for the distribution of said balance.

Thereupon testimony was taken tending to show that the money with which the three judgments had been assigned to the Prudential Investment Company was furnished by A. J. Bethea out of his own funds, and the assignments were pretensive, and made solely in the interest and for the benefit of A. J. Bethea.

On March 12, 1920, the attorneys for the plaintiff served a notice upon the Master, and upon the attorneys for Smoak, requesting the Master to report to the Court the testimony

taken before him and all proceedings had, without making a report, upon the ground that there had been no order referring to him the matter of Smoak's right to said balance, and electing to end the reference and have all matters connected therewith passed upon by the Court.

On March 15, 1920, the attorneys for the plaintiff served a notice upon the attorneys for Smoak, and on March 22, 1920, they would move the Court for an order requiring the Master to pay over to them the said balance.

On the same day, March 15, 1920, the Master filed a report to the Court, submitting the testimony taken before him, reciting the notice dated March 12, 1920, and asking the Court's instructions as to disbursement of the balance.

On March 22, 1920, the attorneys for Smoak served a reply upon the attorneys for plaintiff, to the notice dated March 12, 1920, contending that the references held by the Master were by agreement of the attorneys, under the original order of reference, to save the expense of the new order of reference, and protesting against the withdrawal of the matter from the Master.

On March 23, 1920, the matter came up before Judge McIver in open Court. He signed a decree holding that the entire matter was concluded, as *res adjudicata,* by the previous orders of the Court, granted the plaintiff's motion, and directed the balance to be paid to the plaintiff as the assignee of the three judgments.

From this decree the defendant Smoak has appealed and makes practically these grounds by his exceptions:

(1) Error in withdrawing the case from the Master.

(2) Error in holding that the rights of the defendant Smoak were concluded, as *res adjudicata,* by the previous orders of the Court.

(3) Error in holding that the defendant, Smoak, was entitled to no relief under rule 54 of the Circuit Court.

(4) Error in not holding that the judgments had been

paid by A. J. Bethea after the decree of foreclosure and before sale, and the effect thereof was to discharge the defendant's land from such liens, thus entitling him to the balance on hand.

(5) Error in not holding that the purchase of the land by the plaintiff and the assignment to it of the judgments constituted a merger and satisfaction of the judgments.

(6) Error in not holding, in any event, that should the assignment to the plaintiff be upheld the defendant was entitled to judgment against A. J. Bethea to the extent of the application of said balance to the judgments.

I think that if the respondent had made timely objection to the withdrawal of the issue from the Master and to the hearing and decision of it by the Circuit Judge, he should have prevailed in this contention; but it appears that the matter came up before Judge McIver, "upon the report of the Master asking for instructions and upon motion of plaintiff's attorneys asking that certain funds in the hands of the Master be paid over to the plaintiff." The report was accompanied by the testimony which had been taken and which had been "closed" for argument. No other testimony appeared to be desired by the defendant. The Circuit Judge in his decree states that "the case was fully argued before me, both sides being represented by counsel." It does not appear that the defendant objected at the time of this proceeding or suggested that the matter be sent back to the Master for his decision. He took the chances of a favorable decision by Judge McIver and is not now in a position to claim that he did not have authority to do what the defendant consented that he should do.

I have no hesitation in saying that although Smoak had not filed an answer and therefore was not in a position to except to the report or decree, as he held the legal title to the land, he did not lose the right to come in after the sale and be heard in reference to the distribution of the pro-

ceeds of sale in a matter happening between the time of the decree and the sale and which therefore could not have been concluded by the decree. When he was called upon to answer there were no allegations in the complaint that he could honestly traverse. He might have contested the liens of the judgments entered after the conveyance from Bethea to Stinespring, but he did not do so, and of course is bound by the decree directing these judgments to be paid. But as to matters occurring after the decree which might affect the distribution of the proceeds, I think the Court was open to him under rule 54. I think therefore that the Circuit Judge was in error in holding that the defendant was precluded by the previous orders of the Court.

I think that the whole controversy, however, may be ended by a determination of this question:

Assuming that the money by which the assignments of the judgments were procured was furnished by A. J. Bethea out of his personal funds, and that the assignments to the plaintiff were pretensive, do these facts entitle Smoak to the balance of the proceeds of sale?

If this question should be answered in the negative, it would be useless to remand the case for the purpose of trying an issue which, if determined in Smoak's favor, would afford him no relief. If in the affirmative, the case should be remanded for the trial of that issue, which has not been passed upon by either the Master or the Circuit Judge.

In this discussion, therefore, I will assume as a fact that Bethea furnished out of his own funds the money with which these assignments were procured. From the testimony I have little doubt of it, or of the fact that the assignments made to the Prudential Investment Company were colorable transactions, entered into from a mistaken idea that Bethea personally could not hold assignments of judgments which had been obtained against himself. I use the term "colorable" not at all in an offensive sense, for I

see nothing in the transactions which reflect upon the integrity of Bethea; for, as I shall endeavor to show, he had a perfect right to pay off these judgments and either take an assignment to a friend or an assignment to himself or no assignment at all, and that in any of these events the judgments remained open for his protection. The procurement by Bethea of the assignments to Prudential Investment Company is conclusive of a very essential element in such matters, that he did not intend to discharge the judgments.

In a nutshell, the situation was this: Bethea was the owner of the land; it became subject to the liens of mortgages and judgments; he then owned what is generally, though not in a strictly accurate sense, termed the "equity of redemption"; he conveys the land or, following the common terminology, the equity of redemption, which is the interest which he had in the land subject to the liens; the purchaser buys what Bethea had to sell, this so-called equity of redemption, no more, no less; omitting reference to the subsequent conveyances, Bethea after the conveyance by him pays off the judgment liens; the question is: Does this entitle him to be subrogated to the rights of the judgment creditors, or are judgments extinguished?

The right of subrogation is essentially a creation of the Court of equity, which delights to do substantial justice. Its applicability to a given state of facts depends upon the distribution of substantial justice between parties, based upon well-established rules. It is the equity by which a person who is secondarily liable for a debt, upon paying the debt, assumes by the law the place of the creditor whose debt is paid, and becomes entitled to the securities and remedies of the creditor for his relief against the debtor primarily liable. 2 Story Eq. Jur. (14th Ed.), § 707. Or as more tersely expressed by the author in the same action:

"It is an equity called into existence for the purpose of

making a party secondarily liable, but who has paid the debt, to reap the benefit of any securities which the creditors may hold against the principal debtor, and by the use of which the party paying may then be made whole."

"Indeed the doctrine has become broad enough to include every person who, not being a  *  *  *  volunteer or intermeddler, pays a debt or discharges an obligation which in justice, equity and good conscience ought to be paid or discharged by another."    99 Am. St. Rep., 496, note.

Subrogation "is used  *  *  *  to prevent [loss to?] one person, who, acting with clean hands to protect himself, incidentally but necessarily lifts a burden from another, giving him aid which he cannot in justice  *  *  *  enjoy, without indemnifying such person against loss in the transaction." *Larson v. Oisefos,* 118 Wis., 368, 95 N. W., 399.

"And when a person having an interest in real property pays money to satisfy a lien thereon in order to protect that interest, he is entitled to be subrogated to the rights of the incumbrancer, and considered as an assignee of the lien, for the purpose of effecting substantial justice, although the lien is discharged of record."    99 Am. St. Rep., 512, note.

It follows that the party claiming the right of subrogation must establish:

(1) That he had paid the debt.

(2) That he was not a volunteer, but had a direct interest in the discharge of the debt or lien.

(3) That he was secondarily liable for the debt or for the discharge of the lien.

(4) That no injustice will be done to the other party by the allowance of the equity.

The contention of the defendant Smoak is that the assignments were pretensive, that the money was actually furnished by Bethea; hence it must be assumed that Bethea paid off the judgments, which meets the first requirement.

That Bethea was not a volunteer in the matter is equally clear. It was originally his debt; he was still liable for it; his credit depended upon the payment of his obligations; he had other real estate upon which these judgments were liens; and it may naturally be suggested that the dissolution of these liens was essential to a conveyance of them by him if occasion should arise.

If Bethea had not conveyed the land upon the condition that the purchaser would assume the mortgage debts and take the land subject to the judgment liens, he would have remained primarily liable for these liens; but, as I shall endeavor to sustain by authorities, where the purchaser either assumes the outstanding liens or takes the property *cum onere* (either is sufficient), the property then becomes primarily liable, as between the purchaser and the seller, the latter becoming secondarily liable for the debts.

In 3 Pom. Eq. Jur., § 1205, it is said:

"Where a mortgagor conveys by a deed which states simply that the conveyance is subject to a certain specified mortgage, or words to that effect, the grantee takes the land burdened with the lien. As between himself and the grantor-mortgagor, the land is the primary fund out of which the mortgage debt should be paid; he cannot claim that the mortgagor should pay off the mortgage and thus exonerate the land. He does not, however, become personally liable for the mortgage debt, but the mortgagor remains personally liable for any deficiency arising upon a foreclosure sale of the land. A grantee who thus takes a conveyance subject to a mortgage is presumed to have included the mortgage debt in the purchase price, and is not, therefore, permitted to dispute the validity of the mortgage; in this respect he is in the same position as one who expressly assumes the mortgage."

In 1 Jones on Mortgages (6th Ed.), § 879, it is said:

"If a mortgagor pays or purchases his own mortgage on

land that he has sold subject to a mortgage, which the purchaser has agreed to pay as part of the consideration of the sale, the bond or note is, of course, rendered unavailing; but the mortgage having become the principal security for the payment of the debt, the mortgagor, without taking an assignment of the mortgage, is entitled to be subrogated to this security, and to be repaid out of the land, what he has paid upon the mortgage debt. The same principle applies where the owner of an equity of redemption contracts to sell the land subject to the mortgage, but afterwards pays the mortgage and has it discharged as against the purchaser: The owner is subrogated to the rights of the mortgagee."

"After a mortgagor has sold his equity of redemption he has the same right as any third person to purchase and take an assignment of the mortgage, and upon payment of a prior incumbrance he is entitled to be subrogated to the rights of the holder of such incumbrance."

"In the absence of covenants in the deed having a different effect, it is presumed that the grantee actually paid the value of the land less the mortgage debt, so that it is his equitable duty to pay off the mortgage," certainly to the extent of the proceeds of sale. 3 Pom. Eq. Jur., p 190, note citing *Shuler v. Hardin,* 25 Ind., 385.

"The principal question in the case is whether the transfer of the note, and the assignment of the mortgage to the original mortgagor, after the premises had been sold subject to the mortgage, constituted in law a discharge of the mortgage, so that it could not be enforced against the property. We think it is very clear that they did not. When the estate was sold subject to the mortgage, the mortgage was left as a primary charge upon the land, although the grantee did not make herself personally liable for it by assuming it. The grantor, who was the maker of the mortgage note, was entitled to have the mortgaged property applied in payment

of it. To protect her own interest, she might have taken an assignment of the mortgage and the debt, and enforce the mortgage by foreclosure, as effectually as if she was not the maker of the note." *Pratt v. Buckley,* 175 Mass., 115; 55 N. E., 889.

In *Fogarty v. Hunter,* 83 Or., 183, 162 Pac., 964, practically the precise question was decided. The owner of a tract of land covered by a mortgage executed by him conveyed it subject to the mortgage. He subsequently paid off the mortgage and had it assigned to a third person for his protection. The Court held that he was entitled to be subrogated to the rights of the mortgagee and to enforce the mortgage, quoting 3 Pom. Eq. Jur. (3rd Ed.), § 1205; 27 Cyc., 1329; 1 Jones, Mortg. (6th Ed.), 86la; *Pratt v. Buckley,* 175 Mass., 115, 55 N. E., 889; *Barker v. Parker,* 4 Pick. (Mass.), 505; *Baker v. Loan Co.,* 36 Minn., 185, 30 N. W., 464; *Stillman v. Stillman,* 21 N. J. Eq., 126; *Girdine v. Menage,* 41 Minn., 417, 43 N. W., 91; *Kay v. Castlebury,* 99 Ark., 618, 139 S. W., 645. The Court declares:

"The transfer of the mortgage to Donald, as trustee for Healy, did not satisfy it. The land at that time was owned by a third party, and the mortgage was a valid incumbrance thereon. Healy stood in the situation of a surety on the note, and in order to protect his own interest and credit could pay the debt and have the same  *  *  *  assigned to a trustee for his own benefit and have the mortgage enforced by a foreclosure as effectually as though he were not the maker of the note. Harris on Subrogation, § 651. Healy then had no title to that part of the land in dispute. The mortgage, therefore, did not merge with the legal title."

In *Rogers v. Hidemark,* 70 Minn., 441, 73 N. W., 252, the owner of land covered by mortgages executed by him conveyed it to another subject to the mortgages. The Court held:

"The lot had already been sold by defendants to Myers, subject to both mortgages. Under these circumstances, it [the land] became the primary fund for the payment of the mortgage incumbrance, and on paying the mortgage indebtedness the defendants will be entitled to be subrogated to plaintiff's rights under the mortgage."

In 1 Jones, Mortg. (6th Ed.), § 861a, it is said:

"If the mortgagor takes an assignment of a mortgage after the premises have been sold subject to the mortgage, the mortgage is not thereby discharged so that it cannot be enforced against the property. 'When the estate was sold subject to the mortgage, the mortgage was left as a primary charge upon the land, although the grantee did not make herself personally liable for it by assuming it. The grantor who was the maker of the mortgage note, was entitled to have the mortgaged property applied in payment of it. To protect her own interest she might take an assignment of the mortgage and the debt, and enforce the mortgage by a foreclosure as effectively as if she was not the maker of the note."

"Where an equity of redemption in mortgaged property is sold under execution for a debt other than the debt secured by the mortgage, the sale vests the estate sold in the purchaser subject to the payment of the mortgage debt. But the purchaser cannot hold the entire interest in the land, having paid only the value of the equity of redemption, and if the mortgage debt is satisfied from other property the original holder of the equity of redemption will be subrogated to the rights of the mortgagee to enable him to indemnify himself out of the mortgaged premises." 37 Cyc., 453.

"Real estate incumbered by mortgage was levied on by a judgment creditor. The land was appraised, advertised and sold subject to the mortgage, and bid in by the plaintiff in the execution for a nominal sum. Held, that the latter, having bought the equity of redemption only, could not

be subrogated to the rights of the mortgagee if the amount of the mortgage debt should be collected from other property of the mortgagor." *Kimball v. Hutchison,* 59 Pac., 275, 61 Kan., 191; *Myers v. Jones,* Id.

"Where an equity of redemption in mortgaged property is sold under execution, * * * and if the mortgage debt is satisfied from other property, the original holder of the equity of redemption will be subrogated to the rights of the mortgagee, to enable him to indemnify himself out of the mortgaged premises. *Funk v. McReynolds' Adm'rs,* 33 Ill., 481." 37 Cyc., 453.

"A grantee who takes a conveyance subject to a mortgage is presumed to have included the mortgage debt in the purchase price, and is not therefore permitted to dispute the validity of the mortgage." 3 Pom. Eq., Jur. 1205.

"While there is no clause in the various conveyances making the appellee personally liable for the debt, there is a clause that we have stated, showing that they purchased the property subject to the mortgage debt, and therefore they are not in a position to oppose or defeat the rights of one who holds the prior incumbrance, either through rights of subrogation or by a straightout purchase thereof." *Kay v. Castlebury,* 99 Ark., 618, 139 S. W., 645.

Where the mortgagor has sold his equity of redemption subject to the lien and mortgage, "he has the same right as any third person to purchase and take an assignment of the mortgage, and upon payment of a prior incumbrance to the holder thereof he would be entitled to be subrogated to his rights and substituted in his place as respects the land." *Girdine v. Menage,* 41 Minn., 417, 43 N. W., 91; *Baker v. Guaranty Co.,* 36 Minn., 185, 30 N. W., 464; 27 Cyc., 1329.

"After a mortgagor has sold his equity of redemption in the mortgaged premises, the grantee taking subject to the mortgage or assuming or agreeing to pay it, or after it has been sold on execution, such mortgagor may take an as-

signment of the mortgage without discharging it, and hold it as a valid lien upon the property." 27 Cyc., 1325, citing cases from Indiana, Maine, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, and New York.

In *Pratt v. Buckley,* 175 Mass., 115, 55 N. E., 889, the syllabus is:

"The owner of mortgaged land, selling subject to the mortgage, and remaining personally liable for the debt, may take an assignment of the mortgage, and foreclose to protect herself; and such assignment does not operate as a discharge of the mortgage."

In *Girdine v. Menage,* 41 Minn., 417, 43 N. W., 91, the syllabus is:

"Where a grantee receives a deed of lands incumbered by mortgage, which is expressly excepted from the covenants, the presumption is, in the absence of evidence to the contrary, that the land is taken subject to the lien of the mortgage, if valid; and, as respects the lien thereof upon the land, it is the duty of the purchaser, and not the seller, to discharge the same. In such case, after the mortgagor has sold the equity of redemption, he has the same right as any third person to purchase and take an assignment of the mortgage, and upon payment of a prior incumbrance to the holder thereof he would be entitled to be subrogated to his rights, and substituted in his place as respects the land."

"When one pays a mortgage debt, it is not essential to his right to be substituted in the place of the mortgagee, that he have an avowed intention at the time of the payment to keep the mortgage alive for his protection; an intention to that effect, being to his advantage, will be presumed." 99 Am. St. Rep., 515.

"The fact that the mortgage was paid, and was intended to be paid, is immaterial; equity will keep it alive as long as the rights of the parties require." 99 Am. St. Rep., 516.

Upon the question of the substantial justice of the case

I do not think that there can be two opinions. By the allowance of the right of subrogation to Bethea a simple act of justice is done to him and the defendant Smoak will have received all he bargained for.

The judgments have been decreed liens upon the land and ordered to be paid next after the mortgages. All that Bethea had to do was to sit steady and allow the sale to proceed. There would then have been no question as to the application of this balance to the three judgments. By an arrangement to which Smoak was not a party, Bethea, who was under no obligation to Smoak to relieve the land of these judgments, took them up, as he had the right to do, for his own protection.

Smoak purchased the land with his eyes open, knowing that it was incumbered with the mortgages and the judgments. It must be assumed that in the purchase he deducted the amount of these incumbrances from the purchase price he was willing to pay. He has all that he bought, the land subject to these liens, and it is all that he is entitled to. To allow Bethea the right of subrogation takes nothing from Smoak. If the sale had been allowed to proceed and no payment or assignment of the judgments had been negotiated, Smoak would have had nothing to complain of if the proceeds had been applied to these judgments; it would have been entirely in harmony with his rights and expectations. When this condition is changed by a transaction in which he was not interested and had no legal right to insist upon, it would be unconscionable to allow him for a nominal consideration to "reap where he has sowed not and gather where he has not strewed."

It would be different if Bethea by this transaction had secured an unfair advantage over Smoak. All that Bethea would recover is the money that he has paid out and Smoak getting all that he bargained for, the land subject to the liens, would lose nothing. To deny the right of sub-

rogation to Bethea is to require him to make a present to Smoak of $3,000 and to allow Smoak to get $3,000 more than he bought.

If these views should be sustained, the question of merger and the liability of Bethea to Smoak for the amount of this balance fade from the case. There could be no merger in Bethea, for he did not own the title when the judgments were assigned. There could be no merger in the Prudential Investment Company, for the contention of the defendant, which we uphold, is that it was Bethea's personal funds. Bethea clearly would owe Smoak nothing if this balance properly belonged to him.